H. E. Fletcher Company *vs.* Commonwealth.

Middlesex. November 4, 1965. — March 3, 1966.

Present: Spalding, Kirk, Spiegel, & Reardon, JJ.

*Evidence,* Of value, Judicial discretion, Ground of exclusion. *Practice, Civil,* New trial.

In a proceeding for assessment of damages for a taking by eminent domain, it could not be said on the record that the judge excluded certain evidence of value offered by the petitioner because the judge considered that he was obliged to exclude it as a matter of law, rather than that he excluded it in a permissible exercise of his discretion. [320, 321–323]

An exception to an exclusion of evidence on a general objection will be overruled if any tenable ground for the exclusion existed. [323]

In a proceeding for assessment of damages for a taking by eminent domain of a portion of premises used for a granite quarry, evidence of computations forecasting the profits to be derived from the sale of the stone over a period of forty years, and capitalizing such profits, might properly be excluded in the discretion of the judge. [323–324]

In assessing damages for a taking by eminent domain of a parcel of "wild" land, there was no error in excluding evidence of certain factors, determined after the taking, bearing on a possible use of the land for a granite quarry. [324]

In a proceeding for assessment of damages for a taking of land, there was, on the record, no abuse of discretion in admitting evidence of sales of certain lands as comparable to the land taken, even though some of such evidence might appropriately have been excluded. [324–326]

No abuse of discretion was shown on the record by denial of a motion for a new trial on the ground of inadequacy of damages in a proceeding for assessment of damages for a taking of land by eminent domain.   [326]

PETITIONS filed in the Superior Court on November 30, 1959, and consolidated for trial as a single case.

The case was tried before *Macaulay, J.*

*Robert W. Meserve* (*Leon F. Sargent* with him) for the petitioner.

*F. Dale Vincent,* Assistant Attorney General, for the Commonwealth.

KIRK, J.   The petitioner owns a large tract of land located mainly in the town of Westford.   A very small part is in Chelmsford.   On December 10, 1958, the Commonwealth took a strip of the tract for the extension of a public highway known as Route 3.   The strip taken ran through both towns.   The petitioner brought a separate petition for damages resulting from the taking of its land in each town. Since there was one taking by the Commonwealth of the strip of land belonging to the same owner for the same purpose, the two petitions were properly consolidated for trial as a single case leading to a single verdict.   *Lumiansky* v. *Tessier,* 213 Mass. 182, 188–189.   *Lee Lime Corp.* v. *Massachusetts Turnpike Authy.* 337 Mass. 433, 434.

The jury's verdict was $50,000.   The petitioner, contending that the award was inadequate, brings this bill of exceptions directed to the judge's rulings on evidence and to the denial of the petitioner's motion for a new trial.

We summarize the evidence as shown by the bill of exceptions (eighty-one pages) which incorporates many exhibits by reference.   The entire tract of the petitioner, consisting of 1,050 acres, is located in an area known geologically as the "Chelmsford granite belt" which runs northeasterly for several miles from the vicinity of Ayer through the Chelmsford-Westford area into New Hampshire.   Chelmsford granite in general has the characteristic of being a dark gray stone of fine grain.   The quality of granite is not uniform throughout the belt.   According to the petitioner, the granite taken from its quarry, known

as the Fletcher quarry, was considered superior to that taken from other quarries in the Chelmsford belt. The Fletcher quarry has been in operation for many years. It is located in that part of the petitioner's tract which is in Westford where the removal and processing of granite is permitted by the zoning by-law. The removal and processing of granite is not permitted in Chelmsford. The petitioner has never operated a quarry in Chelmsford.

The taking by the Commonwealth consisted of 17.4 acres of the 1,050 acre tract. The land taken was a strip 300 feet wide and 2,500 feet long. It was wild land, traversed only by hunters. Less than one-half acre of the land taken was in Westford. The remainder of the land taken was in Chelmsford. The strip taken separated the petitioner's land into two parts, a part to the east of the strip of about 67.8 acres, and the rest, to the west of the strip, of over 900 acres. The distance between the active Fletcher quarry and the nearest point of the land taken was 2,500 feet.

In 1957 the petitioner had considered extracting granite from a part of its land other than the active Fletcher quarry. On October 17, 1958, approximately seven weeks before the taking, and knowing of the probability of highway construction, the petitioner purchased eighteen acres of land for $1,475. The land purchased was contiguous to that already owned by the petitioner, and extended across the path of the proposed highway. More than one fourth of the strip taken by the Commonwealth on December 10, 1958, was part of this lately purchased land.

Sometime in 1960 the petitioner caused a study to be made to determine the nature of the stone in its inactive land. Included in the study was the land already taken by the Commonwealth. Core samples produced by test borings made at different points and observation of the granite exposed during the progress of the road construction on the land taken showed a continuous deposit of good granite between the northeast face of the Fletcher quarry to somewhere beyond the land taken. A new quarry could have been opened on the land taken and quarrying could

successfully have been conducted by extracting granite in a southwest direction, where, because of the topography, the face of the new quarry could conveniently be exposed. The opening of a new quarry at this site would be preferable to continuing operations on the northeast face of the Fletcher quarry now in operation. The study led the petitioner to the conclusion that the land taken would have been the logical and best site for a new quarry. The data which the study yielded and upon which the petitioner's conclusion was based were not known to the petitioner at the time of the taking. For reasons of safety, quarrying could not be conducted within 200 feet of both sides of the new roadway.

We consider first the petitioner's exceptions to the exclusion of certain testimony from two expert witnesses. John Alexander of Minnesota, who was familiar with all phases of quarry operations and with the Fletcher quarry among others in the country, testified that the entire Fletcher property was worth $12,000,000 before the taking and $8,000,000 after the taking. Factors entering into his opinion were the ease of extraction, the quality and multiplicity of uses of the stone, its marketability in different sizes, the availability of labor, and the favorable tax situation both for local real estate and the Federal depletion allowance. A zoning regulation which did not permit quarrying in Chelmsford would not in Alexander's opinion be a factor affecting the value of the land.

The petitioner then offered to show through Alexander that it would be able to produce and sell 2,000,000 cubic feet of stone a year for forty years at an annual profit of $1,500,000 of which about $300,000 a year would be used for capital and capital replacement leaving $1,200,000 available as profit subject to taxes with the result that, applying "a rule of thumb" in evaluating quarry property, the petitioner's entire property was worth ten times the gross profits, or $12,000,000. Upon objection by the Commonwealth the judge excluded the proposed line of questions which would elicit the indicated answers. The petitioner excepted. Alexander concluded his testimony by saying

that the difference in the value before and after the taking was because ''the taking was of close to 50% of the reserves . . . [which] were in the good stone belt.''

Ralph A. Fletcher, for many years the petitioner's treasurer, director and active manager, testified to the unusual and desirable characteristics of stone in the Fletcher quarry above others in the Chelmsford granite belt. The only comparable stone was that in the area taken by the Commonwealth. His opinion was that the whole tract was worth $12,250,000 before and $7,750,000 after the taking. That the land in Chelmsford was zoned for residential purposes would have no effect at all, in Fletcher's opinion, on the market value. Factors considered by Fletcher in fixing the figure of $12,250,000 were: an estimated thirty-nine and one-half or forty years of production, an estimated 80,000,000 cubic feet of dimension stone available for extraction at the time of the taking, and an average rate of extraction of 2,000,000 cubic feet a year over forty years. By applying ''the average gross price per cubic foot of stone to the average rate of extraction for this 40-year period,'' he ''came up with the average dollar amount of sales per annum . . . and valued the land at 10 times the gross earnings so computed'' or ''approximately $12,250,000.'' The petitioner then sought to elicit from Fletcher the ''method of computation . . . [t]o check the valuation . . . [he] arrived at as to this property before the taking.'' Subject to exception following the Commonwealth's objection, the judge excluded the question.

At the close of an extended bench conference the judge stated that he would exclude the question on Fletcher's computations as being too speculative. Upon inquiry by the petitioner's counsel whether his ruling was an exercise of discretion or as matter of law that the evidence was inadmissible, the judge stated in substance, ''My present ruling . . . [on] the question . . . you are presently going to . . . [make] an offer of proof on is made as a matter of law.'' The petitioner then offered to show through Fletcher that $5 a cubic foot for its stone was the average

fair price; that 2,000,000 cubic feet would be the average sales a year, producing $10,000,000 in gross sales a year; that after making allowances for return of capital, for labor and other costs of removal and sale of stone and management expenses, there would be a profit figure before taxes of twelve per cent or $1,200,000; that capitalizing this figure and applying to that figure a reasonable factor of ten times the net profit the result would be $12,000,000.

Continuing his testimony, Fletcher said that, immediately before the taking, the "reserves of dimension stone available on the Fletcher property" were 80,000,000 cubic feet, and "that by virtue of the taking the Fletcher Company had lost more than half of its reserves, which of course resulted in a great reduction in the life of the quarry."

The respondent's objections to Alexander's and Fletcher's proffered testimony were general. We need not dwell on the merit of the exception to the ruling as to Alexander. Not only was the exclusion within the judge's discretion and made as matter of discretion, *Providence & Worcester R.R.* v. *Worcester*, 155 Mass. 35, 41, *Manning* v. *Lowell*, 173 Mass. 100, 102, 103, but the figures incorporated in the offer do not appear to have been of Alexander's own knowledge or to have been otherwise in evidence as a basis for the answer sought. It is of more practical importance, however, that the excluded matter was later in full substance introduced without objection through Fletcher, who had personal knowledge of the figures referred to. The petitioner was not harmed by the exclusion of the question to Alexander.

We turn now to the exception relating to Fletcher's testimony. It is first to be noted that a judge is not required to state the grounds for excluding testimony. *H. H. Hawkins & Sons Co.* v. *Robie*, 338 Mass. 61, 66. That a judge accedes to counsel's request for the basis of his ruling does not per se thereafter control the case or become binding on us. The reason here given by the judge in response to the petitioner's request must be considered in the context of a record covering an eighteen day trial.

The judge's words are susceptible to more than one interpretation. They could be taken to mean, as the petitioner contends the judge did mean, that he was required by law to exclude the evidence. They could be taken to mean that the judge excluded the evidence because there was no requirement of law that he admit it. They could, however, be taken to mean that the proffered evidence was, in the judge's opinion, so far beyond the reasonable limits of judicial discretion that its admission might be reversible error, or that the offered evidence was so remote from the ultimate facts sought to be proved (the value of the petitioner's land before, and the value of the remaining land after, the taking) as to be without value as tending to prove the ultimate facts. We need not speculate on the precise meaning of the words used by the judge in replying to a query by counsel during a colloquy at the bench. The petitioner asks us, however, to predicate our holding on the hypothesis that the judge would have admitted the evidence if he had discretion to do so but considered that he was precluded from exercising his discretion in favor of the petitioner because of some rule of law. This hypothesis puts the case in a posture which the record, read literally or in context, does not require and which accordingly we do not adopt. We do not feel constrained to apply here a standard of review other than that which customarily is used when a case involving similar issues comes to us.

"It is the province of the judge, who presides at the trial, to decide all questions on the admissibility of evidence." *Gorton* v. *Hadsell,* 9 Cush. 508, 511. *Fauci* v. *Mulready,* 337 Mass. 532, 540. *Ricciutti* v. *Sylvania Elec. Prod. Inc.* 343 Mass. 347, 351. Upon a general objection, sustained by the judge, the proponent of the evidence has the burden in the first instance of satisfying the trial judge that the proposed evidence has rational probative value. See Wigmore on Evidence (3d ed.) § 18, page 338. On a review by this court of the proponent's exception "the excepting party has the burden of showing by his bill of exceptions that there was substantial error prejudicial to him with

reference to a point covered by an exception." *Furbush* v. *Connolly,* 318 Mass. 511, 512. *Staples* v. *Collins,* 321 Mass. 449, 452, and cases cited. Where, as here, "evidence is excluded upon a general objection, the ruling will be upheld on appeal by the proponent if any ground existed for the exclusion. It will be assumed that the ruling was based upon the right ground." *Palm* v. *Kulesza,* 333 Mass. 461, 463, and cases and authorities cited. "It is not to be assumed that the judge excluded the offered testimony because of a misconception of the law since it appears that a tenable reason for its exclusion existed." *Rubin* v. *Arlington,* 327 Mass. 382, 385.

In the case before us, the judge prefaced his ruling with the comment that he excluded the evidence included in the offer of proof because "the questions and answers suggested asked for so many factors that the evidence was too speculative to be considered." In the context of the bill of exceptions and particularly in light of the judge's comments and his unexceptionable charge to the jury, we cannot reasonably assume, as the petitioner asks us to assume, that the judge "excluded this testimony because . . . [he] was obliged to do so as a matter of law and not as an exercise of discretion . . . ." On the contrary, the record shows that the judge determined that the proposed testimony included elements which impaired its probative quality as evidence of the fair market value of land which had a mass of granite beneath its surface. All of the factors which tended to bear upon the value of the land, including a full description of the property as a potential quarry, had been testified to by Fletcher. *Joseph De Vries & Sons, Inc.* v. *Commonwealth,* 339 Mass. 663, 664. The proffered evidence, however, would have introduced the additional factors of the current market price of a cubic foot of granite and the projection of that price over a period of forty years. It assumed the accuracy of the estimated quantity and quality of the granite in the land taken. It also assumed the constancy throughout the forty year period of marketability of the product, of the costs of labor, of meth-

ods of extraction, processing and transportation, and of continuing tax benefits. It also assumed a change in the zoning by-law of Chelmsford to permit the extraction and processing of granite. The offered evidence did not relate to the value of the land as such but rather was aimed at a forecast of the profits to be derived from the sale of granite blocks which would be extracted from the land and then processed and sold as merchandise over a forty year period. We have recently held that a judge, in his discretion, could exclude precisely this sort of evidence based upon projected profits from mineral deposits considered as merchandise separable from the land. *Joseph De Vries & Sons, Inc.* v. *Commonwealth,* 339 Mass. 663, 664–665. *Consolini* v. *Commonwealth,* 346 Mass. 501, 502. There was no error in excluding the evidence.

There are other reasons which we mention briefly for sustaining the judge's ruling. The land taken by the Commonwealth was "wild land," almost one-half mile away from the existing quarry. The quality of the stone in the land taken was not determined by the petitioner until after the taking. The topographical study was not undertaken until after the taking. The petitioner's conclusion that the best site for the opening of a new quarry was at or near the land taken was not reached until after the taking. Therefore it can scarcely be said that there was, with respect to the land taken, the deprivation of "a project . . . definitely in the process of achievement" at the time of the taking. *United States* v. *25.406 Acres of Land,* 172 F. 2d 990, 992 (4th Cir.). Compare *Aselbekian* v. *Massachusetts Turnpike Authy.* 341 Mass. 398, 401–402.

Other exceptions relate to the Commonwealth's evidence tending to show the value of the taken land through sales of comparable land in the surrounding area. On the admissibility of such evidence, "much must be left to the discretion of the presiding judge, who, in the first instance, is to determine whether there is such general similarity between the land sold and the land taken that the selling price of the former will furnish a fair criterion of the market value

H. E. Fletcher Co. *v.* Commonwealth.

of the latter.'' *Iris* v. *Hingham,* 303 Mass. 401, 408. In his discretion, the judge admitted the following evidence which, for convenience, has been schematically arranged:

| | VENDER | TIME OF SALE | SIZE OF TRACT | LOCATION | PRICE | APPROX. PRICE PER ACRE |
|---|---|---|---|---|---|---|
| 1. | Petitioner | 1952 | 59 acres | Within petr.'s 1,000 acre tract | $ 5,000 | $ 85 |
| 2. | " | 1953 | 46 acres | " | 874 | 19 |
| 3. | LeMasurier | 1956 | 13 acres | 600 ft. from petr.'s land | 1,500 | 115 |
| 4. | " | 1953 | — | Adjacent to petr.'s land | 5,000 | — |
| 5. | Guillemette | 1955 | 30 acres | " | 5,500 | 183 |
| 6. | Morris Bros. Granite Co. Inc. | 1957 | 37 acres | West of petr.'s land | 15,500 | 418 |
| 7. | Soucier | 1956 | 24 acres | Chelmsford residential Zone | 5,500 | 229 |
| 8. | Oak Hill Quarry | 1956 | 10 acres | — | 5,000 | 500 |

With respect to this evidence the question is whether the judge abused his discretion in admitting it.

None of the sales was too remote in time to assist the jury. *Johnson* v. *Lowell,* 240 Mass. 546, 549. All of the sales here were of land within the Westford-Chelmsford granite area and alike in that all the compared tracts were, with one exception, wild and undeveloped as were the petitioner's 17.4 acres taken by the Commonwealth. The exception was sale No. 7, which was of land improved by a residence and public utilities. This, in itself, does not render its selling price inadmissible. See *Gregori* v. *Springfield,* 348 Mass. 395, 397. While sale No. 4 perhaps might have been excluded because of the failure to offer evidence of the price per acre of that land, and sale No. 8

might have been similarly excluded because of an apparent failure by oral evidence to locate the tract precisely with respect to the petitioner's land, we do not think that their admission was harmful in light of the abundance of other, unexceptionable evidence.   Such evidence included the 1958 purchase, for $1,475, of eighteen acres of land (a part of which was in the line of the highway) ; two acres, purchased in 1956 for $1,000, and also in 1956, twenty-two acres for $1,800.   The petitioner did not object to the admission of this testimony.

The petitioner excepted to the judge's denial of its motion for a new trial.  The rules governing review of a judge's exercise of discretion on such a motion are too well known to need repetition.   *Davis* v. *Boston Elev. Ry.* 235 Mass. 482.   *Bartley* v. *Phillips,* 317 Mass. 35.   We are not persuaded that the award of the jury required the judge to order a new trial.

*Exceptions overruled.*