UNITED STATES of America,
Appellee,

v.

Vincent M. MARINO, a/k/a Gigi
Portalla, Defendant,
Appellant.

United States of America, Appellee,

v.

Anthony Ciampi, Defendant, Appellant.

United States of America, Appellee,

v.

Robert F. Carrozza, a/k/a Bobby Russo,
Defendant, Appellant.

Nos. 99–1618, 99–1684, 99–1955.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1999.

Decided Dec. 29, 1999.

Robert L. Sheketoff, with whom Sheketoff & Homan were on brief for appellant Marino.

John H. LaChance for appellant Carrozza.

Kern W. Cleven for appellant Ciampi.

Cynthia A. Young, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.

Before BOUDIN, Circuit Judge, CYR, Senior Circuit Judge, and LYNCH, Circuit Judge.

CYR, Senior Circuit Judge.

Anthony Ciampi, Robert Carrozza, and Vincent Marino appeal from district court orders which (i) rejected their motion to bar their retrial on certain charges as to which the jury was unable to reach verdicts, and (ii) rejected their collateral estoppel challenge to the introduction of evidence relating to certain firearms. As their retrial was imminent, we affirmed the district court orders following oral argument and deferred the explanation for our decision until now.

# I

## *BACKGROUND*

Appellants and twelve codefendants were indicted in April 1997 as alleged members or associates of organized crime, namely the New England-based Patriarca Family, for their roles in various offenses committed between June 1989 and December 1994. Counts 1 and 2 charged appellants with participating and conspiring to participate in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). *See* 18 U.S.C. § 1962(c)-(d). Count 3 charged them with conspiracy to murder fourteen individuals, including Joseph Cirame and Stephen Rossetti, in aid of racketeering. *See id.* § 1959; *see also* count 1 (Racketeering Act A–1). Count 4 charged them with using or carrying firearms in connection with and furtherance of the murder conspiracy alleged in count 3. *See id.* § 924(c). The jury acquitted Marino and Carrozza on count 4, but was unable to reach verdicts as to appellants on counts 1, 2 and 3, or Ciampi on count 4.

Count 30 charged Ciampi with conspiring to distribute narcotics, *see* 21 U.S.C. § 846; *see also* count 1 (Racketeering Act B), and count 31 charged Ciampi and Marino with using or carrying a firearm in

connection with the count 30 conspiracy to distribute narcotics, *see* 18 U.S.C. § 924(c). Although the jury deadlocked on count 30, it acquitted Ciampi and Marino on count 31.

Finally, Ciampi was charged in counts 12 and 16, respectively, with attempting to murder Joseph Cirame and Stephen Rossetti, *see* 18 U.S.C. § 1959, and in counts 13 and 17 with using or carrying a firearm equipped with a silencer and a machine gun, in connection with the attempted murders charged in counts 12 and 16. The jury acquitted Ciampi on counts 13, 16 and 17, but deadlocked on count 12.

Appellants Carrozza and Marino later moved to dismiss count 3,[1] and Ciampi and Marino moved to dismiss count 30, on the ground that their retrial on these counts was barred by the Double Jeopardy Clause because their acquittals on counts 4 and 31 were based on an implicit jury finding that the conspiracies charged in counts 3 and 30 did not exist, or, if they did exist, appellants were not members. Ciampi submitted a separate motion *in limine* to bar, at any retrial on count 4, all evidence of his use of a firearm equipped with a silencer, or of a machine gun, as described in counts 13 and 17, respectively, on the ground that his acquittals on these counts must have been based on an implicit jury finding that he neither used nor carried these particular weapons. The district court rejected their motions. *United States v. Carrozza*, 59 F.Supp.2d 172 (D.Mass.1999).

We ordered these appeals expedited due to the imminence of the scheduled retrial. Shortly thereafter we rejected the appeals from the district court orders denying the motions to dismiss, then dismissed the appeal from the denial of Ciampi's motion *in*

*limine* for lack of appellate jurisdiction, permitting the retrial to proceed. We now explain our rulings.

## II

### DISCUSSION

### A. *The Motions to Dismiss*

■ Appellants argue that their retrial on count 3 is barred because the jury acquittal on count 4 must have been based on a finding that appellants were not members of the count 3 conspiracy.[2] Their contention turns on the pertinent jury instructions.

First, the district court instructed the jury on the two related standards of criminal liability to be applied should it find that appellants *directly participated* in the use of a firearm:

"To find the defendant under consideration guilty of [count 4], you must find either that he knowingly *used*, or *aided and abetted* another in using, a firearm, or that he knowingly carried, or aided and abetted another in carrying, a firearm. You do not need to find both. . . . To find the defendant under consideration guilty of aiding and abetting in this context . . . the government must prove beyond a reasonable doubt that that defendant knew to a practical certainty that one of the other individuals involved in committing the crime would be using or carrying a firearm." (Emphasis added.)

Second, the court gave the *Pinkerton* instruction, *see Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), defining a third and less direct standard of criminal liability, which was applicable because count 3 was not a substantive offense, but a conspiracy. Its in-

---

1. Marino and Carrozza moved to dismiss counts 1 and 2 as well, since the offenses charged in counts 3 and 30 were designated essential racketeering acts in counts 1 and 2.

2. Ciampi and Marino rely on the same rationale in asserting that their acquittals on count 31 barred their retrial on count 30. Ciampi

does not argue for dismissal of count 3, however, since he was not acquitted on count 4. As the identical collateral-estoppel analysis applies to all these claims, we confine our discussion to the effect of the count 4 acquittals.

struction stated: "if [the jury were to find] that the government ha[d] proven the defendant under consideration guilty of conspiracy as charged in count 3 of the indictment," it could then convict the defendant under consideration of count 4 even if that defendant did not directly use the gun or aid and abet another person in its use, *provided* the jury also determined that the government had proven four factors beyond a reasonable doubt: (1) some member of the count 3 conspiracy (other than the defendant under consideration) used or carried the firearm; (2) defendant's coconspirator used the gun "during the existence or life of and in furtherance of the goals or objectives of the conspiracy"; (3) the coconspirator's use of that firearm was "a reasonably foreseeable consequence of the conspiracy to the defendant," and (4) the coconspirator's use of the firearm occurred "at the time that . . . the defendant . . . was a member of the conspiracy."[3]

Finally, in an *ad hoc* supplement to its jury charge, the district court instructed:

Now, I will ask you to look once again briefly at the forms—at the verdict forms that you will be using. First, with respect to the form for Mr. Carrozza, you will see that the first page, as to count 4, "Use or Carry Firearm in count 3." You will not—you will find Mr. Carrozza guilty or not guilty [on count 4] only if you find first that Mr. Carrozza is a member of the conspiracy to murder and in aid of racketeering in count 3. In other words, you look at that one first. If you find him guilty or not guilty [on count 3], you go on to count 4. You then consider count 4 in its entirety, taking into account everything I've said in my instructions, and determine whether or not he is guilty of carrying—using or using a firearm.

■ Under the collateral-estoppel element in the Double Jeopardy Clause, the government may not relitigate at a second trial an issue of ultimate fact previously determined by a valid and final judgment.

*See Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). When a jury reaches a general verdict of acquittal on certain counts, therefore, the defendant may argue that the jury must have based its acquittal on certain factual findings favorable to him, and that those findings bar any retrial on other counts upon which he was not acquitted, since his conviction in the retrial necessarily would depend on the jury at retrial reaching contrary findings as to the same essential facts. *See id.* at 444, 90 S.Ct. 1189.

Appellants argue that the jury could have acquitted on count 4 only if it found that the government failed to prove *all three* standards of criminal liability: actual use, aiding and abetting, *and Pinkerton* ("coconspirator") liability. Therefore, appellants reason, in considering the *Pinkerton* standard the jury must have found that at least one of four factors had not been proven: (1) the existence of the count 3 conspiracy; (2) defendant's coconspirator's use of the firearm "in furtherance" of that conspiracy; (3) defendant's ability reasonably to foresee his coconspirator's firearm use; or (4) defendant's membership in the conspiracy at the time the firearm was used.

Appellants point out that the government adduced overwhelming evidence that the count 3 conspiracy involved plans to murder fourteen persons, and that those persons were in fact fired upon. Thus, they argue, no rational jury could have acquitted them on count 4 due to the government's failure to prove factors two and three, since the government's evidence compelled an inference that the use of the firearm was both foreseeable and in furtherance of the count 3 conspiracy as actually executed.

Accordingly, appellants contend, the jury must have acquitted on count 4 because it found that either (1) the count 3 conspiracy did not exist; or (2) appellants were not members of that conspiracy.

---

**3.** The *Pinkerton* instruction delivered below is set forth in the Appendix.

Thus, either of these factual findings would bar their retrial on count 3 under the doctrine of collateral estoppel.

■■■ The applicability of the collateral estoppel doctrine is reviewed *de novo, see United States v. Lanoue,* 137 F.3d 656, 661 (1st Cir.1998), by " 'examin[ing] [the] record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter[s], and conclud[ing] whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " *Ashe,* 397 U.S. at 444, 90 S.Ct. 1189 (citation omitted). Although appellants need not meet "a standard of absolute certainty," and "[our] approach must be pragmatic in order to prevent the rejection of a collateral estoppel defense in every case in which the prior judgment was based on a general verdict of acquittal," *United States v. Morris,* 99 F.3d 476, 481 (1st Cir.1996), ultimately it is their burden to prove "unequivocal[ly]" that the jury verdict on count 4 necessarily included an implicit factual finding that either the count 3 conspiracy did not exist *or* appellants were not members. *United States v. Aguilar–Aranceta,* 957 F.2d 18, 25 (1st Cir.1992).

■■■ Appellants cannot carry their burden. Unlike the relatively straightforward jury instructions in the cases cited by appellants, *see, e.g., United States v. Romeo,*

4. In *Romeo,* the defendant was charged in one count with importing marijuana, and in a second count with possessing that marijuana with intent to distribute. The jury deadlocked on the importation count, but acquitted on the possession count. The court held that retrial was barred because the possession count had required proof that (1) defendant knew that he possessed marijuana; and (2) he possessed it with intent to distribute. Because Romeo had *carried* 188 pounds of marijuana, the court opined that the jury could not have acquitted for failure to prove intent to distribute, since it was very unlikely that Romeo would possess that quantity for *personal use.* Hence, the court held that the jury must have found that Romeo did not know that he possessed marijuana, a factual finding which would be essential to his conviction for importation at a second trial. *See id.* at 142–44.

114 F.3d 141 (9th Cir.1997),[4] their jury charge contained considerable ambiguity. Moreover, since appellants did not object to the instructions below, the latent ambiguities may not be challenged on appeal. *See United States v. Ellis,* 168 F.3d 558, 561 (1st Cir.1999). While normally we presume juries follow their instructions, *see United States v. Awon,* 135 F.3d 96, 103 (1st Cir.1998), the more tenebrous those instructions, the more difficult it may be for defendants to demonstrate unequivocally on appeal that the jury necessarily predicated its verdict on a particular finding. So it is here, since we cannot determine with any reasonable degree of reliability that the jury interpreted the pertinent aspects of its charge in the manner asserted by appellants.

The district court instructed the jury not to reach a verdict on count 4 until it had reached a verdict on count 3: "[Y]ou will find Mr. Carrozza guilty or not guilty [of count 4] *only if you find first* that Mr. Carrozza is a member of the conspiracy to murder and in aid of racketeering in count 3. In other words, you look at [count 3] *first.* If you find him *guilty or not guilty,* you go on to count 4." (Emphasis added.)[5] Since the jury found the defendant neither guilty nor not guilty on count 3, but deadlocked instead, we are left to divine an interpretation of the charge which might explain its rationale.

The holding provoked a vigorous dissent. *See id.* at 144 (O'Scannlain, J., dissenting).

5. Appellants attempt to get beyond this instruction by noting that the court, as a preface to its earlier *Pinkerton* charge, merely required that the jury "find that the government has proven the defendant under consideration guilty of conspiracy *as charged in* count 3 of the indictment," but did not require that the jury actually have returned a guilty verdict against the defendant on count 3. Aside from its reliance on an unrealistic semanticism, any such narrow parsing of the district court's language was overcome by its later instruction that the jury must reach a verdict on count 3 before proceeding to count 4.

The government offers a plausible explanation: Since the instruction—that the jury not consider count 4 prior to count 3—was given immediately after the *Pinkerton* instruction, the jury may have understood (mistakenly) that the prohibition (against considering count 4 before count 3) applied only to its consideration of the *Pinkerton* criminal liability theory, not its consideration of the earlier "direct" liability or "aiding and abetting" theories. After deadlocking on count 3, however, the jury may have proceeded to count 4—presuming that it need not consider whether the government had proven *Pinkerton* coconspirator liability—and then determined that the government had not proven either direct liability or aiding and abetting beyond a reasonable doubt. In other words, the jury may have acquitted simply because it found that a codefendant (*i.e.*, not the defendant under consideration) had used or carried the firearm, or because the defendant under consideration had not known to a "practical certainty" that a codefendant was using a gun.

Further, appellants—not the government—must bear the burden of persuasion, *see Morris,* 99 F.3d at 480, by explaining in a convincing manner why the jury—if it did agree when it acquitted on count 4 that the count 3 conspiracy did not exist—did not then acquit on count 3. Instead, at best appellants simply offer a plausible competing theory. *See supra.* But even though "'[t]he mere possibility that the jury acted irrationally, *without more,* will not negate the collateral estoppel effects of a prior verdict if a rational interpretation of the verdict as a whole is possible,'" *Romeo,* 114 F.3d at 144 (emphasis added; citation omitted), appellants were confronted with "more": that is, the government's plausible interpretation of the ambiguous jury instructions and the apparent irrationality of the jury verdicts. Accordingly, since each collateral estoppel claim is to be evaluated on its own peculiar facts, the idiosyncratic record in the present case leads us to conclude that the district court correctly denied the motion to dismiss.

### B. *Motion in Limine*

■ Ciampi claims that the acquittals on count 13 (use of handgun equipped with silencer, under count 12, in attempted murder of Cirame) and count 17 (use of machine gun, under count 16, in attempted murder of Stephen Rossetti) bar the government from introducing evidence of Ciampi's use of those particular firearms at any retrial on count 4, which charges him with using firearms to further a conspiracy to murder fourteen persons, including Cirame and Rossetti. As explained below, we lack jurisdiction to entertain the Ciampi appeal.

Unlike appellants' joint collateral-estoppel claim, *see supra* Section II.A, not even a successful appeal from the denial of Ciampi's motion *in limine* would preclude his retrial on count 4. Since count 4 alleges that Ciampi used firearms in connection with a broader conspiracy, a successful appeal would merely restrict the evidence the government could introduce on retrial. It would not necessitate a dismissal of count 4.

■■ Normally, a double-jeopardy appeal is encompassed within the *Cohen* exception to the final judgment rule precisely because, absent an immediate appeal, the core relief conferred by the Double Jeopardy Clause is irretrievably lost to the would-be appellant; that is, insulation from the burdens of an improper retrial. *See Abney v. United States,* 431 U.S. 651, 659–62, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). In contrast, even if the Ciampi motion *in limine* had been granted by the district court, a retrial on count 4 still would have been necessary. Moreover, rulings on motions *in limine* normally are considered provisional, in the sense that the trial court may revisit its pretrial evidentiary rulings at retrial when an evidentiary proffer may be more accurately assessed in the context of the government's other evidence. *See United States v.*

*Smith,* 46 F.3d 1223, 1233 (1st Cir.1995). Thus, the Ciampi challenge is not ripe for appellate review, nor will its postponement irretrievably deprive him of any right protected by the Double Jeopardy Clause.

Although other circuits are unanimous in holding, on collateral estoppel grounds, that no immediate appeal will lie from pretrial evidentiary rulings of this type,[6] Ciampi contends that First Circuit precedent is to the contrary. *See United States v. Royal,* 174 F.3d 1, 9 (1st Cir.1999) (" '[I]n a multipanel circuit, newly constituted panels are, for the most part, bound by prior panel decisions closely on point.' ") (citation omitted). However, the authorities relied on by Ciampi—principally *United States v. DeVincent,* 632 F.2d 155 (1st Cir.1980)—did not reach the jurisdictional issue presented here.[7]

In *DeVincent* we simply pointed out that collateral estoppel "is separate from the application of the *Blockburger* rule[8] or from the core concept of double jeopardy, as well as the comparison of the statutory elements of the two crimes," in that "[c]ollateral estoppel need not apply to a whole count but instead can control a single element of a count or trial." *United States v. DeVincent,* 632 F.2d 155, 160 (1st Cir. 1980). We did so only after completing the *Blockburger* analysis, and before turning to the distinct collateral-estoppel claim asserted by DeVincent. Although the quoted language was intended to contrast core double-jeopardy claims with collateral-estoppel claims, both of which come under the umbrella of the Double Jeopardy Clause, we did not remotely suggest that all collateral-estoppel claims are alike for all purposes, let alone imply that an interlocutory appeal would lie in relation to any

and all collateral-estoppel claims. Rather, collateral-estoppel claims fall into two distinct categories: those involving factual findings which will preclude retrial, and those which merely delimit the scope of the government's evidence on retrial. *De-Vincent, Morris,* and *Aguilar–Aranceta* each involved the former variety. Thus, adoption of the sound jurisdictional rule endorsed by our sister circuits is not precluded under our precedents.

■ Finally, Ciampi suggests that since there can be no question that we possess jurisdiction of the joint appeal from the denial of appellants' motion to dismiss, *see supra* Section II.A, the interests of judicial efficiency would be served were we to invoke our pendent jurisdiction over Ciampi's interlocutory appeal from the denial of his motion *in limine.* This approach is foreclosed as well.

In *Swint v. Chambers County Commission,* 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), the Supreme Court placed severe constraints on the exercise of this type of pendent jurisdiction. *See id.* at 44 n. 2, 115 S.Ct. 1203 (citing *Roque–Rodriguez v. Lema Moya,* 926 F.2d 103, 105 n. 2 (1st Cir.1991)). Where appealable and nonappealable claims are not "inextricably intertwined," "a rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay *Cohen*-type collateral orders into multi-issue interlocutory appeal tickets." *Id.* at 49–50, 115 S.Ct. 1203 (specifically noting that *Abney* found "special considerations" justifying immediate appeals from core Double Jeopardy claims). As the Ciampi appeal from the denial of the motion *in limine* is not intertwined with appellants' joint appeal, we

---

**6.** *See, e.g., United States v. Tom,* 787 F.2d 65, 69 (2d Cir.1986); *United States v. Head,* 697 F.2d 1200, 1205 (4th Cir.1982); *United States v. Mock,* 604 F.2d 336, 338–40 (5th Cir.1979); *United States v. Powell,* 632 F.2d 754, 758 (9th Cir.1980); *United States v. Gulledge,* 739 F.2d 582, 586 (11th Cir.1984).

**7.** Ciampi also cites *Morris,* 99 F.3d at 476, and *Aguilar–Aranceta,* 957 F.2d at 18.

**8.** Under *Blockburger,* the double jeopardy analysis turns upon a comparison of entire counts, with a view to determining whether a particular count "requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

discern no sound basis for exercising pendant jurisdiction.

Accordingly, we affirm the district court order denying appellants' motion to dismiss and dismiss the appeal from the denial of Ciampi's motion *in limine* for want of appellate jurisdiction.

### APPENDIX

A member of a conspiracy who commits another crime during the existence or life of a conspiracy and commits another crime in order to further or somehow advance the goals or objectives of the conspiracy may be found by you to be acting as the agent of the other members of the conspiracy. The illegal actions of that person in committing that other crime may be attributed to other individuals who are then members of that conspiracy and who are also charged with that substantive crime. Under certain conditions, therefore, a defendant may be found guilty of the other crime even though he or she did not participate directly in the acts constituting the offense.

If you find that the government has proven the defendant under consideration guilty of conspiracy as charged in count 3 of the indictment beyond a reasonable doubt, you may also find that defendant guilty of any substantive crimes alleged in counts 4 through 10 and counts 12 through 18, with which he is charged, provided you find that the essential elements of those counts as defined in these instructions have been established beyond a reasonable doubt and, provided further, you also find that each of the following four elements have [sic] been proven beyond a reasonable doubt:

> One, that the specific substantive offense at issue—of murder, attempted murder, or assault with a dangerous weapon in aid of racketeering, or of using or carrying a firearm during and in relation to a crime of violence, as described in any of the counts 4 through 10, and counts 12 through 18 of the indictment, was committed by a member of the conspiracy as detailed in count 3 of the indictment;
>
> Two, that the substantive crime was committed during the existence or life of and in furtherance of the goals or objectives of the conspiracy;
>
> Three, that the substantive crime was a reasonably foreseeable consequence of the conspiracy—reasonably foreseeable to the defendant then under consideration; and
>
> Four, that at the time that the substantive crime was committed, the defendant under consideration was a member of the conspiracy.