# United States Court of Appeals
## For the First Circuit

No. 08-2476

ALTON CLARKE,

Petitioner, Appellant,

v.

LUIS SPENCER, Superintendent at MCI-Norfolk,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Ebel,* Circuit Judges.

Victoria L. Nadel for appellant.
Susanne G. Reardon, Assistant Attorney General, Martha
Coakley, Attorney General, was on brief for appellee.

September 22, 2009

---

*Of the Tenth Circuit, "sitting by designation."

**EBEL**, **Circuit Judge**. Habeas Petitioner Alton Clarke appeals the district court's decision denying him relief, under 28 U.S.C. § 2254, from his Massachusetts convictions for kidnapping and rape. Clarke argues that 1) the Commonwealth unconstitutionally used the fact that he invoked his right to remain silent during a police interrogation against him at trial; and 2) Clarke's retrial, following two earlier trials on similar charges, violated double jeopardy. We reject these arguments and, having jurisdiction under 28 U.S.C. § 2253, we AFFIRM.

## I. BACKGROUND

### A. Factual background

Viewed in the light most favorable to the verdict, see Brewer v. Marshall, 119 F.3d 993, 995 (1st Cir. 1997), the evidence presented during Clarke's third trial established the following: At approximately 9:30 p.m. one night in March 1995, the victim was walking from her home in Roxbury, Massachusetts, to a nearby restaurant. A burgundy-colored car drove up onto the sidewalk, blocking the victim's path. A man, unknown to the victim at the time but later identified as Clarke, jumped out of the car, pointed a gun at the victim, and pushed her into the car. Clarke then drove to a home at 22 Skyview Lane, where he forced the victim into the home's basement at gunpoint. There, Clarke

3

"raped her by first inserting the gun into her vagina, then inserting his penis into her vagina, and finally by inserting his penis into her mouth." Clarke v. Spencer, 585 F. Supp.2d 196, 200 (D. Mass. 2008).

Several weeks later, the victim "recognized and identified Clarke as the man who raped her when, by chance, she ran into him at Boston City Hospital. After a chase by [the victim's] boyfriend and hospital security guards, Clarke was apprehended and taken into custody by Boston Police officers." Id.

At the time of his arrest, Clarke told police that he knew the woman who lived at 22 Skyview Lane, but that he had never taken another woman there and he had never seen the woman who was now accusing him of rape. At trial, however, Clarke testified instead that he met the victim at a club and she propositioned him, offering sex for money. According to Clarke, he accepted the offer, paid the woman half of their agreed-upon fee, and drove her to 22 Skyview Lane, where he knew the owner would not be at home. Clarke testified that, once they got to the house, he was unable to pay the rest of the agreed-upon fee and the woman, therefore, threatened to accuse Clarke of rape.

B. **Procedural background**

1. **State proceedings**

4

The Commonwealth tried Clarke three times.

### a.    First trial, occurring in January 1997

Massachusetts initially charged Clarke with five offenses: "assault and battery with a dangerous weapon, kidnapping, and three counts of aggravated rape, one count for each different form of penetration. Clarke's first trial . . . resulted in a mistrial when the jury failed to reach a unanimous verdict." Id.

### b.    Second trial, occurring in August 1997

"Clarke was retried in August, 1997, on the same charges." Id. The jury convicted him of kidnapping and two counts of the lesser included offense of rape. See id. at 201. The jury acquitted Clarke of the aggravated portion of the rape charges, as well as the charge of assault and battery with a dangerous weapon and the third rape count. See id. at 201. On direct appeal, however, the Massachusetts Appeals Court reversed Clarke's three convictions and remanded his case for another trial, after concluding the Commonwealth had improperly used Clarke's post-Miranda silence against him at trial. See Commonwealth v. Clarke, 722 N.E.2d 987, 992 (Mass. App. Ct. 2000), further review denied, 733 N.E.2d 124 (Table) (Mass. 2000).

### c.    Third trial, occurring in August 2001

Clarke's third trial, the one at issue here, occurred in August 2001. The Commonwealth, this time, tried Clarke only on two charges of rape and one count of kidnapping. See Clarke, 585 F. Supp. 2d at 201. The third jury convicted Clarke of all three offenses, and the court sentenced Clarke to twelve years in prison. See id. According to Clarke, that sentence was later reduced to "eight to ten years." (Aplt. Br. at 4 n.1.)

On direct appeal, the Massachusetts Appeals Court affirmed Clarke's convictions, Commonwealth v. Clarke, 799 N.E.2d 605 (Table), 2003 WL 22881000 (Mass App. Ct. Dec. 5, 2003) (unpublished), and the Massachusetts Supreme Judicial Court denied further review, Commonwealth v. Clarke, 806 N.E.2d 102 (Table) (Mass. Mar. 31, 2004) (unpublished).

## 2. Federal habeas proceedings

In March 2006, Clarke filed his federal habeas petition pursuant to 28 U.S.C. § 2254. The district court denied relief, but granted Clarke a certificate of appealability ("COA"), see 28 U.S.C. § 2253(c), on the claims he is currently pursuing on appeal.

## II. DISCUSSION

**A.  Whether the Commonwealth used Clarke's invocation of his right to remain silent during a police interrogation against him at trial**

### 1.  Standard of review

Because the Massachusetts Appeals Court addressed and rejected the merits of this claim, see Clarke, 2003 WL 22881000, at *1, a federal court "shall not" grant Clarke habeas relief on this basis unless the state appellate court's

> adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This court reviews the district court's decision to deny § 2254 relief de novo. See John v. Russo, 561 F.3d 88, 91 (1st Cir. 2009).

**2. Merits**

The Government may not use at trial the fact that a defendant, after receiving Miranda[1] warnings, invoked his right to remain silent. See Anderson v. Charles, 447 U.S. 404, 407-08 (1980); Doyle v. Ohio, 426 U.S. 610, 611 (1976); Miranda, 384 U.S. at 468 n. 37. A defendant can, however, knowingly and voluntarily waive his right to remain silent, see Miranda, 384 U.S. at 444, by, for example, voluntarily answering questions after receiving Miranda warnings. See

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

7

Charles, 447 U.S. at 408; cf. Montejo v. Louisiana, 129 S. Ct. 2079, 2085 (2009) (addressing waiver of Fifth Amendment right to counsel after Miranda warnings). But such waiver "is not an all-or-nothing proposition." United States v. Andújar-Basco, 488 F.3d 549, 555 (1st Cir. 2007). A suspect may invoke his right to remain silent in any manner at any time before or during interrogation. See Miranda, 384 U.S. at 444-45, 473-74. The First Circuit has further concluded that "the words the defendant uses to assert the privilege are themselves protected by it." Andújar-Basco, 488 F.3d at 557.

Clarke contends that at trial the Commonwealth, in three ways, improperly used at trial the fact that he invoked his right to remain silent during an interrogation.

### a. Detective Gavin's testimony

Clarke first argues that the Commonwealth improperly used his post-Miranda silence during its direct examination of Detective Donna Gavin. Gavin testified that when she interviewed Clarke, following his arrest, Clarke told her that he had never seen the victim before and that he had never brought any female guest to 22 Skyview Lane. Gavin asked Clarke how it was, then, that the victim could describe the home located at 22 Skyview Lane. But, before Gavin could explain to the jury Clarke's answer to that

8

question, the court sustained defense counsel's objection because it was in response to that question that Clarke invoked his right to remain silent. Gavin then testified simply that the interview had ended shortly thereafter.

The Massachusetts Appeals Court rejected Clarke's claim that Detective Gavin's direct testimony amounted to improper use of his invoking his right to remain silent at the post-arrest interview because the trial court sustained the objection and Gavin never answered the question. See Clarke, 2003 WL 22881000, at *1. That determination was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. See Greer v. Miller, 483 U.S. 756, 763-65 (1987).

### b. Cross-examination of Clarke

Clarke next argues that the prosecutor improperly used Clarke's post-Miranda silence while cross-examining him. On direct examination, Clarke testified, contrary to Detective Gavin, that he told the detective that he had once brought a prostitute to 22 Skyview Lane and that when he could not pay her, she threatened to accuse him of rape. During cross-examination, the following exchange occurred:

Q. It's your testimony ----

A. It's my testimony today before the jurors that I did told [Detective Gavin] I brought someone, a guest, a prostitute, at 22 Skyview Lane.

9

Q. Sir, isn't it true that you told Detective Gavin that you never brought anyone to Skyview Lane, right sir?

A. Totally impossible.

Q. And sir, when she asked you, she asked you, didn't she, sir, how the woman would know the inside and outside of that house, right?

[Defense Counsel]: Objection

THE COURT: Sustained.

[Prosecutor]: Your Honor, may I be heard at sidebar?

THE COURT: No, you may not. Sustained. Move on, let's go.

[Prosecutor]: Your Honor, may I be heard at side bar?

THE COURT: No, you may not.

Q. You were asked about the description of the house, correct, Mr. Clarke?

[Defense attorney]: Objection.

THE COURT: Sustained.

Q. Sir, you'd agree with me that Detective Gavin wouldn't have asked that question if you had said that you had brought someone to Skyview Lane, right, Mr. Clarke?

[Defense Attorney]: Objection.

THE COURT: Sustained.

[Prosecutor]: Your Honor, may I be heard at side bar?

THE COURT: No, you may not. Let's move on.

10

Q. You'd agree, sir, that that question wouldn't make any sense, right, sir?

[Defense Attorney]: Objection.

THE COURT: Sustained.

Q. You'd agree, sir, that Detective Gavin would have no reason to ask you about how she would be able to describe the inside and outside of the house if you had told her that you brought someone in that house, right, Mr. Clarke?

[Defense Attorney]: Objection.

THE COURT: Sustained.

Q. And Detective Gavin asked you that question, didn't she, Mr. Clarke?

[Defense Attorney]: Objection.

THE COURT: Sustained.

(Tr. v. II at 278-80.) Later in the cross-examination, the prosecutor asked: "When you knew, sir, that mistaken identity would not work" as a defense, "isn't that when you said . . . she was a prostitute?" (Id. at 293.) The trial court sustained defense counsel's objection and ordered the "[j]ury [to] disregard the last question." (Id.)

The Massachusetts Appeals Court held this cross-examination did not amount to improper use of Clarke's post-Miranda silence, again because the trial court had sustained defense counsel's objections to all of those questions "and the jury consequently never heard the answer or that it was the defendant, not Detective Gavin, who

11

terminated the interview." Clarke, 2003 WL 22881000, at *1. That determination was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

The Government might improperly "use" a defendant's post-Miranda silence simply by posing questions to a witness, even where the witness does not answer. See Ellen v. Brady, 475 F.3d 5, 12-14 (1st Cir. 2007). In addition, "[a] prosecutor's persistence in referring to the defendant's post-Miranda silence . . . may result in a [constitutional] violation even when no evidence of the defendant's silence is submitted to a jury."[2]  Id. at 14. But that was not the case here.

The prosecutor's questions did not directly or indirectly suggest that Clarke might have invoked his right to remain silent. And the trial court prevented any response from Clarke from which jurors might have inferred

---

[2]In making this observation, the First Circuit cited, e.g., Hill v. Turpin, 135 F.3d 1411 (11th Cir. 1998), which found a constitutional violation under much more egregious circumstances than those presented here. See Ellen, 475 F.3d at 14. In Hill, the prosecutor directly brought to the jury's attention Hill's post-Miranda silence on four separate occasions over the course of two days of trial, during the examination of several witnesses and closing argument. See Hill, 135 F.3d at 1414-16. Under those circumstances, the Eleventh Circuit held that "the prosecution's repeated and deliberate references throughout Hill's trial to his post-Miranda silence and request for counsel violated the Due Process Clause of the Fourteenth Amendment." Id. at 1412.

12

that he invoked that right.  In addition, both before and after trial, the court instructed jurors generally to disregard questions and evidence to which an objection had been sustained.  See Greer, 483 U.S. at 764-65 (addressing a single objectionable question); see also Andújar-Basco, 488 F.3d at 559-60; Ellen, 475 F.3d at 11.

### c.  Closing argument

Lastly, Clarke asserts that comments the prosecutor made during her closing argument amounted to improper use of Clarke's post-Miranda silence.  The prosecutor argued, in closing, that Clarke

> needs to explain to you today why he said to Detective Gavin when Detective Gavin said to him, "Did you ever see that woman before?"  "No, I've never seen her before."  "Did you ever take a woman to 22 Skyview Lane?"  "No, I never took a woman to 22 Skyview Lane."  But think about it, ladies and gentlemen, why would Detective Gavin then ask, why would she say, "Well, if you never took a woman to 22 Skyview Lane and you don't know this woman, how come she can describe the inside and outside of that house?"  Why would she ask that, that wouldn't make sense.

(Tr. v. III at 30.)

The Massachusetts Appeals Court held that "there was nothing improper about the prosecutor's arguing to the jury that the story the defendant gave to the detective prior to ending the interview was inconsistent with his trial testimony."  Clarke, 2003 WL 22881000, at *1.  That determination, too, was not contrary to, nor an unreasonable

13

application of, clearly established Supreme Court precedent. The Commonwealth could properly introduce evidence of what Clarke told Detective Gavin during the interrogation, before Clarke invoked his right to remain silent. See Charles, 447 U.S. at 408; Andújar-Basco, 488 F.3d at 555. The fact that what Clarke told Detective Gavin contradicted the story that Clarke told jurors at trial was fair game during closing argument.

**B. Whether the jury's verdict in the second trial precluded Clarke's third trial on the two rape offenses**

At his second trial, the jury acquitted Clarke of assault and battery with a dangerous weapon, one count of rape, and the aggravated element of all three rape charges, but convicted him of kidnapping and two counts of rape. See Clarke, 2003 WL 22881000, at *1. The Massachusetts Appeals Court reversed those three convictions, paving the way for Clarke's third trial, at issue here. See Clarke, 722 N.E.2d at 989, 994. On appeal to this court, Clarke asserts two theories for why the results of his second trial precluded his retrial on any of the rape counts, or at least precluded the Commonwealth from presenting at his third trial any evidence that he had a gun.

**1. Whether double jeopardy barred Clarke's third trial on any of the rape charges**

14

Clarke's first theory is that the Double Jeopardy Clause precluded the Commonwealth from retrying him on any of the three rape charges.

### a. Procedural default

The district court held that for federal habeas purposes Clarke had procedurally defaulted this claim by failing to raise it in the state trial court. See Clarke, 585 F. Supp. 2d at 203-04. We disagree. "[A] federal claimant's procedural default precludes federal habeas review . . . only if the last state court rendering a judgment in the case rests its judgment on the procedural default." Harris v. Reed, 489 U.S. 255, 262 (1989). Although Clarke failed to raise this double-jeopardy argument before or during his third trial,[3] Clarke did raise the issue on direct appeal to the Massachusetts Appeals Court. And, notwithstanding Clarke's default in the trial court, the Massachusetts Appeals Court addressed and rejected this claim on its merits. See Clarke, 2003 WL 22881000, at *2. We, therefore, can address the merits of

---

[3] Prior to his third trial, Clarke did file a motion to dismiss the indictment, raising a different double-jeopardy argument—that, because the prosecutor's actions during the second trial were taken in an attempt to goad Clarke into moving for a mistrial, double jeopardy precluded his retrial on the offenses on which the second jury convicted Clarke. See Clarke, 2003 WL 22881000, at *1. Clarke does not reassert that double-jeopardy argument in these habeas proceedings.

15

Clarke's double-jeopardy claim here. See Harris, 489 U.S. at 263 (holding that "a procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar" internal quotes omitted)); see also Carsetti v. Maine, 932 F.2d 1007, 1010 (1st Cir. 1991); Allen v. Massachusetts, 926 F.2d 74, 78-79 (1st Cir. 1991).

### b. Standard of review

Because the state appellate court addressed and rejected Clarke's double-jeopardy claim on its merits, this court "shall not" grant Clarke habeas relief unless the state appellate court's "adjudication of the claim" was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or was an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d).

### c. Merits

Following the reversal of the results of Clarke's second trial, the Commonwealth was free to retry him on the offenses for which he had previously been convicted—kidnapping and two rapes—but could not retry him on the offenses on which the second jury had

16

acquitted—assault and battery with a dangerous weapon, aggravated rape, and a third rape. See Lockhart v. Nelson, 488 U.S. 33, 38-39 (1988). The problem in this case, according to Clarke, is that it is unclear on which of the three rape counts the jury acquitted during the second trial. The three verdict forms for rape submitted to the jury during the second trial each listed aggravated rape and the lesser offense of rape, but did not otherwise specify to which of the rape charges each verdict form referred—penile penetration, oral rape, or penetration with the gun. Clarke contends that, because it was unclear on which of these three rape charges the jury acquitted, the Commonwealth could not retry him on any of those three rape charges.

The Massachusetts Appeals Court rejected that argument see Clarke, 2003 WL 22881000, at *2, concluding that the trial court had clearly instructed jurors which charged rape count pertained to each verdict slip:

> [L]et me first tell you what the Commonwealth's theory is. The Commonwealth is going forward alleging aggravated rape, three counts of aggravated rape, first by penetration by the defendant, the defendant's penis into [the victim's] vagina; second, oral penetration of the defendant's penis into her mouth; and, third, penetration into her vagina by a gun. Those are the three indictments for aggravated rape.

(D. Ct. Doc. 11, attachment 1, supp. app. at 1.) Because the jury acquitted Clarke of the third rape count, the state

17

appellate court determined that the second jury acquitted Clarke of the rape involving penetration with the gun, Clarke, 2003 WL 22881000, at *2. Therefore, the Massachusetts Appeals Court concluded that trying Clarke again on the other two rapes counts did not violate double jeopardy. See id. That determination was not an unreasonable application of clearly established Supreme Court precedent. See Abney v. United States, 431 U.S. 651, 663-65 (1977) (considering, in rejecting double-jeopardy argument against second trial, jury instructions given during first trial to determine which of two offenses the jury convicted the defendant). Nor, on the facts of this case, was it "an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2).

As an alternative theory for habeas relief, Clarke argues that his trial attorney was constitutionally ineffective for failing to raise this double-jeopardy argument before or during his third trial. To succeed on such a claim, Clarke must establish both that his trial counsel's performance was deficient and that that deficiency prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Because we have concluded that Clarke's double-jeopardy claim fails on its merits, his trial attorney was not constitutionally deficient in failing

18

to raise this issue, nor did that failure prejudice Clarke's defense.

**2.  Whether principles of collateral estoppel precluded the Commonwealth, during Clarke's third trial, from introducing evidence that Clarke had a gun**

Clarke's final theory for habeas relief is that, if it was clear that the jury at his second trial acquitted him of rape by penetrating the victim with a gun, then the Commonwealth was collaterally estopped from presenting at his third trial evidence that he had a gun.

**a.  Exhaustion**

While collateral estoppel is still an "element in the Double Jeopardy Clause," such an argument is distinct from the core concept of Double Jeopardy. See United States v. Marino, 200 F.3d 6, 9, 12 (1st Cir. 1999). Clarke never specifically raised his collateral-estoppel argument to the Massachusetts state courts. It is, thus, unexhausted. Nevertheless, we can still address the merits of Clarke's claim here because we conclude the issue does not warrant habeas relief. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

19

### b. Merits

Because Clarke never raised his collateral-estoppel claim in the state court, our review is de novo. See Marino, 200 F.3d at 10.

Collateral estoppel, in the criminal context, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970); see also Yeager v. United States, 129 S. Ct. 2360, 2367 (2009); Bobby v. Bies, 129 S. Ct. 2145, 2152 (2009). Clarke asserts that the jury at his second trial found that he did not have a gun when he kidnapped and twice raped the victim. Clarke bases this argument on the jury's decision to acquit him of the charges of assault and battery with a dangerous weapon, rape by penetration with a gun, and aggravated rape, which may be proven by the use of a gun during the rape. Assuming, without deciding, that Clarke's second jury did

find that he did not have a gun,[4] Clarke's collateral-estoppel argument still does not warrant relief.

The jury at his third trial, in convicting Clarke of kidnapping and two rape counts, did not necessarily have to find that Clarke had a gun. See Bies, 129 S. Ct. at 2152 ("A determination ranks as necessary or essential only when

---

[4] In applying collateral estoppel in a criminal context where, as here, the jury issued a general verdict, we must "examine the record of the prior proceeding" to determine what the prior jury necessarily found. Ashe, 397 U.S. at 444 (quotations omitted). In doing so, we will take "into account the pleadings, evidence, charge, and other relevant matter" in order to decide "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Id. (quotation omitted); see also Yeager, 129 S. Ct. at 2367. Clarke bears the burden of proving "unequivocally[] that the [earlier] jury verdict . . . necessarily included an implicit factual finding" precluding retrial. Marino, 200 F.3d at 10 (quotations omitted); see also Dowling v. United States, 493 U.S. 342, 350 (1990). But Clarke, who has been represented by counsel throughout these federal habeas proceedings, has failed to provide this court with a record from the second trial sufficient to permit us to conduct such a review. See Dowling, 493 U.S. at 351-52 (rejecting collateral-estoppel argument where defendant had failed to show that prior prosecution necessarily decided issue sought to be precluded in subsequent prosecution).

"If a judgment does not depend on a given determination, relitigation of that determination is not precluded"; "[a] determination ranks as necessary or essential only when the final outcome hinges on it." Bies, 129 S. Ct. at 2152. The district court, in denying habeas relief, held that Clarke had failed to show that his second jury found that he had no gun, suggesting that, even in light of the acquittals, the jury still would not necessarily have had to find that Clarke had no gun. See Clarke, 585 F. Supp.2d at 208. Clarke has failed to present to us an adequate record for us to challenge that conclusion.

the final outcome hinges on it."). Therefore, the jury did not have to make a finding of ultimate fact that contradicted the second jury's findings. See Dowling, 493 U.S. at 348 (rejecting collateral-estoppel claim where, "unlike the situation in Ashe . . . , the prior acquittal did not determine an ultimate issue in the present case"); Marino, 200 F.3d at 9 (noting that, "[w]hen a jury reaches a general verdict of acquittal on certain counts, . . . the defendant may argue that the jury must have based its acquittal on certain factual findings favorable to him, and that those findings bar any retrial on other counts upon which he was not acquitted, since his conviction in the retrial necessarily would depend on the jury at retrial reaching contrary findings as to the same essential facts") (emphasis added); United States v. Dray, 901 F.2d 1132, 1136 (1st Cir. 1990) (noting that, "if an issue determined in a prior proceeding between the same parties (or their privies) constitutes a necessary element of a subsequent prosecution, collateral estoppel will likely operate as a complete bar to the latter prosecution") (emphasis added).

Here, in the third trial, Clarke was charged with one count of kidnapping and two counts of rape. None of those counts required proof that Clarke had or used a gun. Thus, there is no double jeopardy problem, even assuming the jury

22

in the second trial determined that Clarke did not use a gun during these crimes.

Nevertheless, evidence that Clarke used a gun was still relevant evidence to help explain how Clarke was able to force the victim into his car and to compel her to submit to his sexual demands. Even reading the second verdict as Clarke argues, all that can be determined from the second verdict is that the jury found the government had failed to prove the existence of a gun "beyond a reasonable doubt." But that is not the test for the introduction of relevant evidence in the third trial; that only requires that the evidence be probative — that it tends to explain or strengthen or make an asserted act more likely than not to be true. Clarke never objected to the introduction of this evidence on the grounds that it was not relevant. See Dowling, 493 U.S. at 348, 350 (declining to extend Ashe "to exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted").

This case is similar to Dowling, in which the Supreme Court held that the prosecution could present evidence of a prior robbery, of which the defendant had already been acquitted, as evidence of other crimes or bad acts under

23

Fed. R. Evid. 404(b).  See 493 U.S. at 348, 350.  Dowling specifically noted that, to present evidence of other bad acts under Fed. R. Evid. 404(b), the prosecution need not prove the defendant committed that act beyond a reasonable doubt, but only that the jury could "reasonably conclude that the act occurred and that the defendant was the actor." 493 U.S. at 348-49.  In Dowling, then, "[t]he Supreme Court rejected the [collateral-estoppel] claim, pointing to the difference in the burden[s] of proof" between convicting a defendant and establishing the evidence's admissibility. Rossetti v. Curran, 80 F.3d 1, 5 (1st Cir. 1996); see also United States v. Felix, 503 U.S. 378, 386 (1992).  Under Massachusetts law, the proponent of evidence at trial, upon general objection, only "has the burden . . . of satisfying the trial judge that the proposed evidence has rational probative value."  H.E. Fletcher Co. v. Commonwealth, 214 N.E.2d 721, 725 (Mass. 1966); see generally Rossetti, 80 F.3d at 5 (noting that "[n]o intermediate fact need be proved beyond a reasonable doubt, so long as the crime itself is proved beyond a reasonable doubt").  For these reasons, Clarke has failed to establish that habeas relief is warranted under his collateral-estoppel claim.

### III.  CONCLUSION

24

For the foregoing reasons, we AFFIRM the district court's decision denying Clark habeas relief.