# United States Court of Appeals
## For the First Circuit

No. 02-1098

UNITED STATES,

Appellee,

v.

FELIX DONNAT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U. S. District Judge]

Before

Boudin, Chief Judge,

John R. Gibson,[*] Senior Circuit Judge,

and Torruella, Circuit Judge.

Bjorn Lange, Assistant Federal Public Defender, on brief, for appellant.
Mark E. Howard, Assistant United States Attorney, on brief, for appellee.

November 20, 2002

[*]Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON, <u>Senior Circuit Judge</u>.** Felix Donnat appeals from his conviction for bank fraud under 18 U.S.C. § 1344 (2000) and possession of a United States Treasury check bearing a forged endorsement under 18 U.S.C. § 510(b) (2000). Donnat argues that there was insufficient evidence of his intent to defraud to support a conviction under § 1344 and that he should not have been convicted under § 510(b) because he did not know that the endorsement on the Treasury check in his possession had been forged. He also contends that he is entitled to a new trial on the grounds that the prosecutor violated <u>Doyle</u> v. <u>Ohio</u>, 426 U.S. 610 (1976), by asking him why he did not contact the Secret Service with an exculpatory story he first told at trial that was inconsistent with a story he told the Secret Service after his arrest. We reject these arguments and affirm his conviction.

I.

Felix Donnat is a Haitian citizen who had been living in the United States for twelve years. On January 27, 2001, Donnat deposited a United States Treasury check payable to the Lewis Austin Weeks Trust in the amount of $888,023.78 into his own checking account at the Citizen's Bank in Manchester, New Hampshire. The Lewis Austin Weeks Trust is a private trust managed by Citibank for the benefit of, among others, Lewis Austin Weeks, who is also its co-trustee. At no time did Donnat know anyone named Lewis Austin Weeks, nor did he have any connection to the

Lewis Austin Weeks trust. The manager of the trust testified that at this time the trust was expecting a tax refund in this amount.

On the reverse side of the check, two lines were printed in handwritten manuscript:

Pay to the order of Donnat Felix

Lewis Austin

Just below this, Donnat signed his name.

There is no dispute that the printed name "Lewis Austin" was a forgery and was not the endorsement of anyone authorized to negotiate the check. The payee named on the check was the Lewis Austin Weeks Trust, not "Lewis Austin." The trust manager also testified that Lewis Austin Weeks always signed his name "L. Austin Weeks."

Citizen's Bank refused to accept Donnat's deposit. The bank's branch manager froze both Donnat's checking and savings accounts at the bank, refused to conduct any further business with Donnat, and on January 30, 2001, contacted the Secret Service, which commenced an investigation.

A grand jury indicted Donnat on one count of bank fraud under 18 U.S.C. § 1344 and one count of possession of a United States Treasury check bearing a falsely made or forged endorsement under 18 U.S.C. § 509(b).

Two days later, a Secret Service agent arrested Donnat.

Donnat was informed of his <u>Miranda</u> rights and signed a waiver consenting to speak to the agent without counsel. The agent questioned Donnat in the agent's vehicle while traveling to the Merrimack County Jail. After arriving at the jail, the agent prepared a written statement from Donnat's answers, which Donnat reviewed, acknowledged, and signed. Donnat stated that he had received the check in December, 2000 from an individual named "Patrick," whom he had met one night at a Manchester nightclub where Donnat worked as a cook and a disc jockey. Patrick asked Donnat to deposit the treasury check in Donnat's bank account. Patrick told Donnat that he would be able to keep five thousand dollars, so long as he sent Patrick the remainder of the proceeds in periodic installments of ten or twenty thousand dollars. Donnat told the agent that he saw Patrick print the name "Lewis Austin" across the back of the check and write "pay to the order of Donnat Felix" above this endorsement.

Donnat did not object to either the admission of this written statement or the agent's testimony about the interview. However, Donnat testified that he was given the check not by Patrick but by a different individual named "Carlos," whose real name was Pegui Loubens and whom he identified as a business associate of his brothers. He said that Carlos asked him to deposit the check in his account and that "as a friend, I thought I would do him a favor." He stated that the endorsement "Lewis

-4-

Austin" was already printed on the check when he received it and he did not see Carlos write anything on the check. He also testified that he himself printed the phrase "Pay to the order of Donnat Felix" on the back of the check, above "Lewis Austin," before attempting to deposit the check. He claimed both that he was not aware that the signature "Lewis Austin" on the back of the check was a forgery and that he believed that Carlos was entitled to the check. In all other respects, however, Donnat admitted that the statement covered everything he said to the agent after his arrest.

The jury found Donnat guilty on both counts. The district court sentenced Donnat to twenty-four months imprisonment. Donnat appeals.

## II.

Donnat argues that the evidence presented at trial was insufficient to support a conviction under 18 U.S.C. § 1344 and 18 U.S.C. § 510(b). We will affirm Donnat's conviction if we conclude that after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Blasini-Lluberas, 169 F.3d 57, 62 (1st Cir. 1999) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

## A.

In order to obtain a conviction for bank fraud under 18 U.S.C. § 1344, the government must prove beyond a reasonable doubt

that the defendant "(1) engaged in a scheme or artifice to defraud, or made false statements or misrepresentations to obtain money from; (2) a federally insured financial institution; (3) and did so knowingly."[1]  See United States v. Brandon, 17 F.3d 409, 424 (1st Cir. 1994).  Donnat challenges only the jury's finding that he had the criminal intent required under § 1344, which we have held is the specific "intent to deceive the bank in order to obtain from it money or other property."  United States v. Kenrick, 221 F.3d 19, 29 (1st Cir. 2000), cert. denied, 531 U.S. 961 (2000); United States v. Rodriguez-Alvorado, 952 F.2d 586, 589 (1st Cir. 1991).

We conclude that a rational jury could have found that Donnat executed some scheme or made a misrepresentation to the Citizen's Bank with the intent to deceive the bank in order to obtain money.  The jury saw Donnat's statement to the Secret Service agent, in which Donnat said that the treasury check had been given to him by "Patrick," whom Donnat had seen write the endorsement "Lewis Austin" on the back of the check.  From this evidence, the jury could have found that Donnat knew that this endorsement was a forgery.  It could have reasonably concluded that

---

[1]18 U.S.C. §1344 provides: "Whoever knowingly executes, or attempts to execute, a scheme or artifice -
(1) to defraud a financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

by depositing this forged check into his own account, he intended to deceive the Citizen's Bank into believing that the check had been duly negotiated to him and that he was entitled to its proceeds.

At trial Donnat testified that when he received the check from "Carlos," it already bore the endorsement "Lewis Austin" and that he had no idea that this endorsement was a forgery. However, the jury was free to believe the statement he gave to the Secret Service agent and dismiss his trial testimony as unworthy of belief, and we may not reassess the credibility of a witness on appeal. Rodriquez-Alvorado, 952 F.2d at 589. But even if the jury believed Donnat's claim that he did not see anyone forge the endorsement, there was sufficient circumstantial evidence for it to infer that Donnat participated in a scheme with the intent to defraud the Citizen's Bank. See Brandon, 17 F.3d at 425 (stating that fraudulent intent may be established by circumstantial evidence). Donnat was aware of the extraordinary amount of the check and that the check was not payable to the person from whom he had received it. Furthermore, upon receiving the check, he agreed with another person on a plan to distribute and allocate the proceeds of the check.

B.

Donnat also contends that there was insufficient evidence to convict him of knowingly possessing a United States Treasury

-7-

check bearing a forged endorsement under 18 U.S.C. 510(b). 18 U.S.C. 510(b) provides:

> Whoever, with knowledge that such Treasury check or bond or security of the United States is stolen or bears a falsely made or forged endorsement or signature buys, sells, exchanges, receives, delivers, retains, or conceals any such Treasury check or bond or security of the United States shall be fined under this title or imprisoned not more than ten years, or both.

Donnat does not challenge the jury's findings that he possessed a United States Treasury check and that the check contained a forged endorsement. Rather, he disputes only whether he knew that this endorsement was a forgery. However, as we have discussed above, Donnat admitted to the Secret Service agent that he saw "Patrick" write someone else's name on the back of the check. This supports the jury's finding that he knew the endorsement was forged. The jury could have reasonably believed this account over his later denial of any knowledge of the forgery. Therefore, we must uphold his conviction under 510(b).

### III.

Donnat argues that the prosecutor violated Doyle v. Ohio, 426 U.S. 610 (1975), by commenting on his post-arrest silence and that he is therefore entitled to a new trial. Towards the end of cross-examination of Donnat, the prosecutor asked Donnat:

> Q: And there's no such person as Patrick. He never existed.
> A: No, sir.
> Q: And at no time did you ever contact the Secret Service after you first gave them a statement and say, you know, I want to tell you about Carlos?

Donnat's counsel made a general objection to this last question, which the court sustained.  Donnat's counsel did not request a curative instruction regarding this question.

Donnat argues that this question violates <u>Doyle</u> because it was designed to impeach his testimony with his decision to remain silent after his arrest.  His argument has been foreclosed by the Supreme Court's decision in <u>Anderson</u> v. <u>Charles</u>, 447 U.S. 404 (1979).  <u>Doyle</u> forbids a prosecutor from using a criminal defendant's decision to remain silent at the time of arrest and after receiving the <u>Miranda</u> warnings to impeach his trial testimony, since the defendant's exercise of his <u>Miranda</u> rights would effectively be penalized.  <u>Doyle</u>, 426 U.S. at 618.  In <u>Charles</u>, however, the Court held that when a defendant has given a post-arrest statement to the police, <u>Doyle</u> does not bar a prosecutor from inquiring about the defendant's failure to tell the police the exculpatory story he presented at trial, if that story is inconsistent with the post-arrest statement.  <u>Charles</u>, 447 U.S. at 408-09.  Where the defendant elects to speak to the police and gives statements that he later contradicts at trial, a prosecutor's inquiry into the defendant's failure to give the exculpatory account before trial does not draw a negative inference from the defendant's decision to remain silent but rather from his prior inconsistent statement.  <u>See</u> <u>Charles</u>, 447 U.S. at 409.  We noted in <u>Grieco</u> v. <u>Hall</u>, 641 F.2d 1029, 1034 (1st Cir. 1981), that

-9-

although <u>Charles</u> does not allow full cross-examination about the defendant's failure to come forward with an exculpatory story whenever he has made any post-arrest statement, it nevertheless established that "<u>Doyle</u> will not protect a defendant who chose not to remain silent after arrest about the subject matter of statements he later contradicts at trial."

This case clearly falls within the scope of <u>Charles</u>. Donnat's testimony at trial contradicted the statement he previously gave to the Secret Service agent. The prosecutor then questioned Donnat about why he did not tell the police about Carlos before trial. Under <u>Charles</u>, the question in this case is permissible because it does not draw meaning from Donnat's reliance on his right to remain silent but instead seeks an explanation for his prior inconsistent statement to the Secret Service agent. <u>See</u> 447 U.S. at 409.

Donnat argues that <u>Charles</u> only allows a prosecutor to ask this question in order to establish that the defendant made a prior inconsistent statement. Since he had already admitted that he made a prior inconsistent statement, he argues that the final question was designed to impeach his trial testimony only through his post-arrest silence. We reject this argument, since <u>Charles</u> specifically allows the prosecutor "to elicit an explanation for a prior inconsistent statement." <u>Charles</u>, 447 U.S. at 409.

Finally, Donnat argues that the prosecutor's question

violated the defendant's Sixth Amendment right to counsel by improperly suggesting that Donnat had an obligation to contact either the Secret Service or the police without the assistance of counsel.  This claim is without merit.  The prosecutor's question had nothing to do with whether Donnat should or should not have communicated through counsel.  It was not designed to draw a negative inference from Donnat's exercise of his Sixth Amendment right to rely on counsel as a medium between him and the State and thus did not unfairly burden Donnat's Sixth Amendment right to counsel.

IV.

For the foregoing reasons, we affirm Donnat's conviction under 18 U.S.C. § 1344 and 18 U.S.C. §510(b).