**Alton CLARKE, Petitioner**

v.

**Luis SPENCER, Respondent.**

Civil No. 06–10572–RCL.

United States District Court, D. Massachusetts.

Nov. 12, 2008.

Victoria L. Nadel, Boston, MA, for Petitioner.

Susanne G. Reardon, Daniel I. Smulow, Office of the Attorney General, Trial Division, Boston, MA, for Respondent.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. INTRODUCTION

Alton Clarke ("Clarke") filed this petition for a writ of habeas corpus to chal-

lenge his detention pursuant to Section 2254(d) of Chapter 28 of the United States Code. Clarke is serving a twelve-year sentence for rape and kidnapping at MCI–Norfolk. Clarke alleges that during his retrial upon reversal of prior convictions, the ambiguity of identically worded verdict slips, which acquitted him of one count of rape while convicting him of two other rape counts, subjected him to double jeopardy. Clarke further alleges that the prosecution impermissibly used his act of terminating his post-arrest interview to imply guilt and thus violated his right to remain silent.

Respondent Luis Spencer ("Spencer"), the Superintendent of MCI–Norfolk, opposes the petition, arguing that Clarke's double jeopardy claim is procedurally defaulted as it was not raised during state proceedings and that Clarke has not overcome the default by demonstrating cause for the default and prejudice from it or, alternatively, that he is actually innocent. Spencer further claims that use of Clarke's post-arrest testimony during his cross-examination is permissible impeachment.

## A. Relevant Factual Background

Clarke was convicted of kidnapping and raping the complainant, Dawn Rose. Rose testified that Clarke pointed a gun at her, forced her to get into his car, and drove her to a house, which she later identified as 22 Skyview Lane. Once inside the house, Rose testified that Clarke raped her by first inserting the gun into her vagina, then by inserting his penis into her vagina, and finally by inserting his penis into her mouth. Approximately three weeks later, Rose recognized and identified Clarke as the man who raped her when, by chance, she ran into him at Boston City Hospital. After a chase by Rose's boyfriend and hospital security guards, Clarke was ap-

prehended and taken into custody by Boston Police officers.

Detective Gavin of the Boston Police Department interviewed Rose at the hospital, where she described the incident, including the inside of 22 Skyview Lane. Clarke was taken to the police station and, after being read Miranda warnings, agreed to speak with Gavin. Gavin testified that during the interview Clarke initially denied ever having taken guests to 22 Skyview Lane, a house owned by his friend. When questioned about how the complainant might have been able to describe the inside of the house, Clarke indicated that he had nothing more to say on the subject and Gavin terminated the interview.

At trial Clarke testified that he was approached by Rose while shopping at a store and was offered sexual services in exchange for a fee. He stated that they agreed to the payment of forty dollars "up front" and the remaining forty dollars upon arrival at their destination. Clarke then took Rose to 22 Skyview Lane, where he told her he did not have the funds to pay her. After Rose refused to return the forty dollars, Clarke testified that he took back his money from her, at which point, Rose became angry and threatened to accuse Clarke of rape.

## B. Procedural History
### 1. Clarke's First Trial

Clarke was charged with assault and battery with a dangerous weapon, kidnapping, and three counts of aggravated rape, one count for each different form of penetration. Clarke's first trial, in January, 1997, resulted in a mistrial when the jury failed to reach a unanimous verdict.

### 2. Clarke's Second Trial

Clarke was retried in August, 1997, on the same charges. The verdict slips for the aggravated rape charges were num-

bered, but otherwise identically worded, and the trial judge instructed the jury about how the counts corresponded to the verdict slips. The jury convicted Clarke of kidnapping and two counts of the lesser included rape offenses and acquitted him of the assault and battery with a dangerous weapon and the third count of rape.

Clarke appealed, arguing that testimony regarding his post-arrest silence was impermissibly used to imply his guilt, contrary to *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The Appeals Court agreed and reversed his convictions, setting aside the verdict on January 27, 2000. *Commonwealth v. Clarke,* 48 Mass.App.Ct. 482, 722 N.E.2d 987 (2000) (hereinafter *"Clarke II"*), *appeal denied, Commonwealth v. Clarke,* 431 Mass. 1103, 733 N.E.2d 124 (2000) (unpublished table decision).

### 3. Clarke's Third Trial

Following the reversal, the Commonwealth again retried Clarke in August of 2001 on the remaining two lesser counts of rape and kidnapping. At the start of the third trial, Clarke moved to dismiss the charges, claiming the prosecutor's willful violations and attempts to "goad" Clarke into a mistrial were impermissible double jeopardy violations. The trial judge denied the motion and Clarke appealed the denial, pursuant to Massachusetts law, to a single justice of the Massachusetts Supreme Judicial Court, who also rejected it.[1]

The third trial judge granted Clarke's motion in limine, precluding the prosecution from asking about the detective's question that led Clarke to terminate his interview. The trial judge also sustained all objections during cross-examination of Clarke that concerned the termination of

his interview. During closing argument, the prosecution commented on the inconsistencies between the initial story told to Detective Gavin and the story presented at trial but the jury was instructed not to treat closing arguments as evidence. Clarke was again found guilty of kidnapping and both counts of rape and subsequently sentenced to the twelve years he is currently serving.

Clarke appealed this verdict, again claiming impermissible use of his post-arrest interview termination to imply his guilt. He further argued that the third trial was a violation of double jeopardy because it was unclear on which rape count he had previously been acquitted, as the verdict slips were identically worded. The Appeals Court affirmed all the convictions, ruling that the prosecution's arguments were proper and the judge's motions to limit post-arrest testimony prevented any *Doyle* violations. *Commonwealth v. Clarke,* No. 02–P–891, 60 Mass.App.Ct. 1105, 799 N.E.2d 605, 2003 WL 22881000 (Dec. 5, 2003) (unpublished table decision) (hereinafter *"Clarke III"*). The Appeals Court held that the double jeopardy claim was barred as it was raised for the first time on appeal. The Court also noted that even had the claim been properly raised, its underlying assumptions were invalid since jury instructions clearly set out the order of the counts of the indictment and the corresponding verdict slips. The Supreme Judicial Court denied further appellate review on March 31, 2004.

On June 10, 2005, Clarke filed a *pro se* motion in Suffolk Superior Court asking for a Required Finding of Not Guilty or a New Trial, pursuant to Rule 25(b)(2) of the Massachusetts Rules of Criminal Procedure, which is still pending. On March 31,

---

1. Subsequent appeal to the full Supreme Judicial Court was dismissed as moot because Clarke's third trial was over by this point.

*Clarke v. Commonwealth,* 437 Mass. 1012, 770 N.E.2d 475 (2002).

2006, Clarke filed this petition for a writ of habeas corpus claiming that his conviction was obtained in violation of his protection against double jeopardy and privilege against self-incrimination.

## II. ANALYSIS

### A. The Applicable Legal Standard

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus shall not be granted for any claims that were adjudicated on the merits in state court unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Yarborough v. Alvarado*, 541 U.S. 652, 655, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). For a state court decision to be contrary to clearly established law, it must "appl[y] a rule that contradicts the governing law set forth in [the Supreme Court] cases" or "confront[ ] a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive[ ] at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Federal courts may also grant the petition under the "unreasonable application" clause, if the state court correctly identifies the governing legal principles but unreasonably applies those principles to the facts of the case. *Id.* at 407, 120 S.Ct. 1495. In deference to state courts, application of the law must be not merely incorrect but "objectively unreasonable". *See id.* at 409, 120 S.Ct. 1495.

**2.** Clarke's pending claim in Suffolk Superior Court does not violate the exhaustion requirement because he does not raise that claim in his habeas petition. *See O'Sullivan v. Boerck-*

### B. Prerequisites for Habeas Corpus

#### 1. Clarke Exhausted His State Remedies

State prisoners are required to exhaust their available state remedies before petitioning the Federal courts for habeas relief. 28 U.S.C. § 2254(b)-(c) (2006); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). Clarke has fully exhausted the available state remedies for the claims raised in this petition and may therefore be heard by this Court. On appeal, Clarke raised both the double-jeopardy and the *Doyle* claim, citing Supreme Court precedent and the U.S. Constitution to alert the state courts to the federal nature of his claims. *See* Petitioner's Appellate Brief 16, 24 (Docket No. 5). The Appeals Court of Massachusetts upheld the judgment, and the Supreme Judicial Court denied further review.[2] *Clarke III*, 60 Mass.App.Ct. 1105, 799 N.E.2d 605, 2003 WL 22881000, at *1, *2, *appeal denied, Commonwealth v. Clarke*, 441 Mass. 1105, 806 N.E.2d 102 (2004) (unpublished table decision).

#### 2. Clarke's Petition Time-barred

In enacting AEDPA, Congress sought to limit to one year the time during which habeas petitions could be brought after state prisoners have exhausted their available state remedies. 28 U.S.C. § 2244(d) (2006); *see also Day v. McDonough*, 547 U.S. 198, 201, 202, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (holding that district courts are permitted to consider, sua sponte, the timeliness of habeas petitions). This one-year statute runs from the time a state conviction becomes final, not including a 90–day period during which the prisoner may seek certiorari review

*el*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (holding that petitioners do not have to invoke remedies that are alternatives to the standard review).

from the Supreme Court, and serves to bolster the interest in the finality of state court judgments. *Day,* 547 U.S. at 201, 208 & n. 8, 126 S.Ct. 1675. The statute is tolled, however, while the petitioner's "properly filed" application for "[s]tate post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2).

■ To toll the statute of limitations, state claims need to be collateral, "separate and distinct from an earlier proceeding"; they "typically entail a challenge to the legality of the earlier proceeding or judgment." *Walkowiak v. Haines,* 272 F.3d 234 (4th Cir.2001); *see, e.g., Rodriguez v. Spencer,* 412 F.3d 29, 34 (1st Cir. 2005) (noting that a Massachusetts Criminal Procedure Rule 30 motion for post-conviction relief provides for collateral review); *Currie v. Matesanz,* 281 F.3d 261, 267 (1st Cir.2002) (holding Massachusetts General Laws Chapter 278, Section 33E— appeal of denial of post-conviction review—tolls statute). *But see Voravongsa v. Wall,* 349 F.3d 1, 2 (1st Cir.2003) (ruling appointment of counsel not to be collateral review); *Phillips v. Spencer,* 477 F.Supp.2d 306, 310 (D.Mass.2007) (Gorton, J.) (ruling that Massachusetts Criminal Procedure Rule 29—motion for revision and revocation of sentence—is not a separate proceeding).

Clarke's state conviction became final on March 31, 2004, and therefore his habeas petition, filed two years later on March 31, 2006, is untimely, unless the statute was tolled for part of that time. *See Day,* 547 U.S. at 201, 126 S.Ct. 1675. It is unclear whether Clarke's pending motion for a "Reduction of Verdict or New Trial", which was filed pursuant to Rule 25(b)(2) of the Massachusetts Rules of Criminal Procedure on June 10, 2005, entitles him to

statutory tolling under Section 2244(d)(2) and his brief does not advance anything other than a statement that his petition is timely. There appear to be no cases in this district that address Rule 25 as it pertains to tolling the AEDPA statute of limitations. Because Rule 25 is modeled on Rule 29 of the Federal Rules of Criminal Procedure (a trial motion that is not considered collateral post-conviction relief) Clarke's habeas petition may well be dismissed as untimely. *See* Fed.R.Crim.P. 29; *see also Smith v. Massachusetts,* 543 U.S. 462, 468, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005). Still, Massachusetts law allows treating a Rule 25 motion to be treated as a motion under Rule 30 for collateral post-conviction relief, if the motion is the same in nature and substance. *See Commonwealth v. Pring–Wilson,* 448 Mass. 718, 731–33 & n. 14, 863 N.E.2d 936, 946–47 (2007). Perhaps in an excess of caution, this Court treats this Rule 25 motion as tolling the statute. This in turn makes Clarke's petition timely.

## C. The Double Jeopardy Claim is Procedurally Defaulted and Clarke Has Not Demonstrated Cause and Prejudice Necessary to Overcome the Default

■ Federal habeas review of state prisoner claims is barred when a state court conviction rests on adequate and independent procedural grounds, unless the prisoner can demonstrate cause for this procedural default and that actual prejudice resulted from it.[3] *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). To show cause under this standard, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to com-

---

**3.** Clarke does not argue that failure to consider his claims will result in a "fundamental miscarriage of justice" or that he meets the

"actual innocence" standard. *See Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

ply with the State's procedural rule." *Id.* at 753, 111 S.Ct. 2546 (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Ineffective assistance of counsel may constitute such cause only when the petitioner is constitutionally entitled to effective counsel and that counsel's performance is constitutionally ineffective under the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), standard. *See Coleman,* 501 U.S. at 752, 111 S.Ct. 2546. Additionally, the First Circuit has also held that under *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the prejudice showing needed to excuse a procedural default may be met by a finding of prejudice stemming from ineffective assistance of counsel under *Strickland. Lynch v. Ficco,* 438 F.3d 35, 49 (1st Cir.2006).

## 1. Ineffective Assistance of Counsel Was Not Cause That Would Excuse the Procedural Default

■ The party asserting ineffective assistance of counsel must overcome the strong presumption that counsel rendered adequate assistance during trial and must show both that counsel's performance was deficient and that such deficient performance prejudiced the defense.[4] *Strickland,* 466 U.S. at 687, 692, 104 S.Ct. 2052. Performance falling below an objective standard of reasonableness deprives the defendant of their right to a fair trial, as guaranteed by the Sixth Amendment. *See id.* at 688–89, 104 S.Ct. 2052.

Failure to raise futile or meritless legal arguments falls well within this wide range of reasonable assistance and thus cannot constitute ineffective assistance of counsel. *United States v. Hart,* 933 F.2d 80, 83 (1st

Cir.1991); *Acha v. United States,* 910 F.2d 28, 32 (1st Cir.1990); *see also Phoenix v. Matesanz,* 233 F.3d 77, 84 (1st Cir.2000) (holding that defense counsel may make strategic decisions, within wide bounds of professional competence, as to which areas to focus his energies, especially during trial, particularly when time is short). Counsel is ineffective only when his behavior deprives clients of adversarial testing of their claims. *See Scarpa v. DuBois,* 38 F.3d 1, 10–11 (1st Cir.1994) (defense counsel evidenced a "blatant misunderstanding of the charged crimes" and reinforced the prosecution's theory of the case by effectively conceding elements of the crime); *see also Owens v. United States,* 483 F.3d 48, 58 (1st Cir.2007) (holding counsel ineffective for failing to inform client of right to testify, as required by Rule 1.2(a) of the Model Rules of Professional Conduct); *Tejeda v. Dubois,* 142 F.3d 18, 25 (1st Cir.1998) (finding that failure to present primary line of defense was inadequate performance).

Because Clarke's Appeals Court decision rested clearly and unambiguously on a procedural violation, which Spencer has timely asserted as reason to bar habeas review, Clarke's double jeopardy claim is procedurally defaulted. *See Coleman,* 501 U.S. at 728, 111 S.Ct. 2546.

The Appeals Court rejected Clarke's double jeopardy claim as not being properly raised, noting that even were the claim properly raised, it would have been rejected. *Clarke III,* 2003 WL 22881000, at *2. Trial counsel's failure to raise meritless objections does not fall below the standard of reasonable representation and therefore such assistance was not constitutionally ineffective. *See Hart,* 933 F.2d at 83; *see also* Rule 3.1 of the Model Rules of Profes-

---

**4.** Clarke does not contend that an exception announced in *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), where counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing", applies here.

sional Conduct (2002) (prohibiting attorneys from bringing claims not supported in law and fact). Clarke's counsel chose strategically to raise defenses with a greater chance of success, such as petitioning the Supreme Judicial Court for dismissal on other double jeopardy grounds and filing motions in limine to preclude further *Doyle* violations. *See Clarke III*, 2003 WL 22881000, at *1. Clarke's petition fails to overcome the presumption of adequate performance and the record shows that Clarke's counsel was reasonably competent, if ultimately unsuccessful. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

### 2. Ineffective Assistance of Counsel Did Not Prejudice Clarke's Trial to Excuse Default

█ In addition to showing counsel's incompetence, the defendant must also demonstrate that deficiencies in counsel's performance prejudiced the defense. *Strickland*, 466 U.S. at 692–93, 104 S.Ct. 2052. The appropriate test for prejudice is a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one "sufficient to undermine confidence in the outcome", and a court reviewing such claims must consider the totality of the evidence before the judge or jury. *Id.* at 694, 695, 104 S.Ct. 2052. Counsel's objections that would have been overruled do not prejudice the proceeding sufficiently to undermine confidence in the outcome. *See United States v. Fisher*, 3 F.3d 456, 463 (1st Cir.1993); *see also Straw v. United States*, 931 F.Supp. 49, 52 (D.Mass.1996) (Gorton, J.) (holding that no prejudice resulted where downward departure in sentencing would not have been granted, even if petitioner's argument had been made).

Since Clarke's double jeopardy objection would not have been granted, failure to raise it did not prejudice him or undermine confidence in the outcome of his third trial. *See U.S. v. Rogers*, 41 F.3d 25, 35 (1st Cir.1994), *cert. denied*, 515 U.S. 1126, 115 S.Ct. 2287, 132 L.Ed.2d 289 (1995) (although defense counsel should have made evidentiary objections, counsel's performance was not inadequate under *Strickland* and did not prejudice the outcome). The Appeals Court noted that, since one could not assume that the verdict slips were unclear, there is no reasonable probability that Clarke's outcome would have been different had the objection been raised. *Clarke III*, 2003 WL 22881000, at *2. Failure to object on double jeopardy grounds thus does not undermine confidence in the outcome as it is unlikely that the trial judge would have sustained the objection. *See Rogers*, 41 F.3d at 35. Furthermore, Clarke would still have been tried for the kidnapping charge as the clarity of that conviction was never in question. *See Strickland*, 466 U.S. at 694–95, 104 S.Ct. 2052.[5] Because Clarke has not established

---

**5.** Clarke alternately claims his counsel was ineffective because he allowed evidence of the gun to be admitted, when such evidence was prejudicial and concerned prior acquitted conduct. Because possession of a firearm is a potential factor in both the rape and kidnapping offenses with which Clarke was charged, Clarke's argument is without merit. Mass. Gen. Laws ch. 265, §§ 22(b), 26 (2000). Admission of such evidence was well within the trial judge's discretion and not in error. *See,* *e.g., United States v. Cintolo*, 818 F.2d 980, 998 (1st Cir.1987); *see also Commonwealth v. Jackson*, 388 Mass. 98, 104–105, 445 N.E.2d 1033, 1037–38 (1983) (ruling that since it appeared that guns might have been used in commission of rape or kidnapping, the guns were relevant); *Commonwealth v. Glover*, 17 Mass.App.Ct. 1001, 1001, 459 N.E.2d 1251, 1252 (1984) (holding that rape victim's direct testimony as to defendant's possession of gun was relevant to victim's frame of mind, partic-

that ineffective assistance of counsel prejudiced his trial, he likewise cannot use that prejudice to overcome the procedural default on his habeas claim. *See Lynch,* 438 F.3d at 50.

### D. Rejection of Double Jeopardy Claim By the Appeals Court Would Not Be Contrary to Federal Law

1. Double Jeopardy Does Not Apply Because The Numbered Verdict Slips and Jury Instructions Clearly Indicated for Which Conduct Clarke Was Acquitted

 The Double Jeopardy Clause protects the individual from the hazards of multiple trials and possible multiple convictions for the same alleged offense, as it is unfair to allow the State to use its vast resources and power to subject individuals to embarrassment, expense and ordeal by repeated attempts to obtain a conviction. *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). Retrial following reversal of a conviction, however, is not barred by the principles of double jeopardy because such retrial does not subject the defendant to further jeopardy for acquitted conduct and fairly balances the right of the accused with societal interest in punishing the guilty. *See United States v. Tateo,* 377 U.S. 463, 465, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). Therefore where it is clear that the defendant was not acquitted of specific charges, retrial on only the convicted charges following a reversal does not subject the defendant to double jeopardy. *See Abney v. United States,* 431 U.S. 651, 665, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

Thus, when a jury found the defendant guilty of a single indictment of both conspiracy and an attempt to violate the

Hobbs Act, subsequent retrial on the conspiracy charge alone did not violate double jeopardy because nothing suggested that the jury rendered an ambiguous verdict. *Abney,* 431 U.S. at 664 & n. 9, 97 S.Ct. 2034. The prosecution presented both conspiracy and attempt offenses as a single count and the trial judge instructed the jury that they would have to find that elements of both crimes were established in order to convict the defendant. *Id.* at 664, 97 S.Ct. 2034. The Supreme Court held that it was unreasonable to assume that the jury disregarded clear instructions by returning a guilty verdict without finding that both conspiracy and attempt were proven. *See id.* at 665, 97 S.Ct. 2034. Therefore retrial on the conspiracy charge alone was allowed because it was clear that the defendant had not previously been acquitted of that charge. *See id.*

Clarke has not shown that his third trial for the remaining oral and vaginal rape counts after his acquittal for the rape with a gun count was contrary to, or an unreasonable application of, clearly established Federal law because it was clear which charges resulted in an acquittal. *See Abney,* 431 U.S. at 665, 97 S.Ct. 2034. Examination of the record shows that the verdict slips for the three counts of rape at the second trial were numbered and the trial judge's instructions explained how the slips were to be ordered to correspond with the charges in the indictment. Respondent's Supplement to Answer, 57–60 (Docket No. 11). Furthermore, the Appeals Court held that acquittal for the third count of rape—penetration with the gun—was consistent with acquittal for assault and battery with a dangerous weapon. *Clarke III,* 2003 WL 22881000, at *2. Similar to *Abney,* where the jury's clear finding of guilt for both conspiracy and attempt allowed subsequent trial for the

ularly with respect to whether she should

have attempted to resist).

conspiracy charge alone, the verdict sheets and the judge's instructions specifying the charges indicate that the jury acquitted Clarke only of the rape count that involved penetration with the gun. *See Abney,* 431 U.S. at 664 & n. 9, 665, 97 S.Ct. 2034.

2. Collateral Estoppel Does Not Prohibit Comments and Evidence About Gun Because That Issue Was Not Fully Determined at Clarke's Second Trial

■■■■■■ The constitutional guarantee against double jeopardy embodies the doctrine of collateral estoppel and forbids relitigation of the same issues of ultimate fact between the same parties if those issues have previously been determined by a valid and final judgment. *Ashe v. Swenson,* 397 U.S. 436, 442–443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Collateral estoppel, however, does not bar evidence of an ultimate fact where the prior acquittal did not determine that issue, as this does not subject the parties to relitigation or risk inconsistent outcomes. *See Dowling v. United States,* 493 U.S. 342, 348, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). The burden is on the defendant to show that issues which he seeks to foreclose from relitigation have actually been decided in a prior proceeding. *Id.* at 350, 110 S.Ct. 668. If the acquittal was based on a general verdict, courts must " 'examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration.' " *Id.* (quoting *Ashe,* 397 U.S. at 444, 90 S.Ct. 1189) (internal citation omitted). Furthermore, differences in burdens of proof also preclude application of collateral estoppel. *Dowling,* 493 U.S. at 348–49, 110 S.Ct. 668.

Thus the *Dowling* Court ruled that testimony concerning acquitted conduct was not excluded by collateral estoppel when introduced for a limited purpose or under a different burden of proof. *See* 493 U.S. at 349, 110 S.Ct. 668. In *Dowling,* a bank-robbery defendant objected to introduction of testimony about a prior robbery for which he had been acquitted. *Id.* at 344–45, 110 S.Ct. 668. The trial judge admitted this testimony as it was relevant to the identity of the defendant, but limited its use and informed the jury of the defendants' acquittal. *Id.* at 346, 110 S.Ct. 668. The Supreme Court allowed such testimony, as it was relevant and probative under Rule 404(b) of the Federal Rules of Evidence and was introduced under a lower burden of proof than in the prior trial. *Id.* at 348–49, 110 S.Ct. 668. Because the defendant failed to show that his identity was a factual issue in the prior robbery trial, collateral estoppel did not prohibit admission of such testimony. *See id.* at 352–53, 110 S.Ct. 668. The testimony was also admitted by the Court because Rule 404(b) imposed a lesser burden of proof than the prior trial. *See id.*

■■■ Collateral estoppel, however, would preclude the state from trying a defendant multiple times for charges stemming from the same incident where issues of the defendant's identity had been previously established and the only difference is the identity of the victims. *See Ashe,* 397 U.S. at 446, 447, 90 S.Ct. 1189. In *Ashe,* the Supreme Court held that collateral estoppel barred trying a defendant for robbing a second player in a poker game when the defendant had been acquitted by a general jury verdict on a charge of robbing one of the other players in the group. *Id.* at 445, 446, 90 S.Ct. 1189. The Court reasoned that allowing such a subsequent trial would violate double jeopardy as it would allow the state to continuously retry

defendants until a conviction was secured, and may result in inconsistent outcomes. *See id.* at 446, 90 S.Ct. 1189; *see also Harris v. Washington,* 404 U.S. 55, 56–57, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971) (barring retrial of petitioner for assault of one victim stemming from exploded mail bomb after his acquittal for murder of the other victim from the same explosion); *Green,* 355 U.S. at 186, 198, 78 S.Ct. 221 (prohibiting retrial for first degree murder when defendant could have been convicted of first degree murder, but was instead convicted of second degree murder).

Clarke has not shown that the issue of the gun was actually decided by the acquittal at his second trial and therefore his alternate claim—that testimony and comments about the gun should have been collaterally estopped—cannot form the basis for granting his habeas petition. *See Dowling,* 493 U.S. at 350, 352, 110 S.Ct. 668. The jury acquitted Clarke of vaginal penetration with the gun as well as assault and battery with a dangerous weapon, but Clarke has failed to demonstrate that the jury concluded that no gun was involved in the kidnapping and rape. *See Clarke III,* 2003 WL 22881000, at *2. Like the use of prior acquitted conduct in *Dowling,* gun evidence at Clarke's third trial was relevant and probative, and was thus admissible under Massachusetts evidentiary principles which establish a lower burden of proof, i.e. making an ultimate fact more likely than it would be without the evidence, William G. Young, John R. Pollets & Christopher Poreda, *Massachusetts Evidentiary Standards* 76 (2008) (Evidentiary Standard 402) and cases cited, than the burden required for conviction of the gun-

related charges. *See Dowling,* 493 U.S. at 348–49, 110 S.Ct. 668; *see also United States v. McMahon,* 938 F.2d 1501, 1508 (1st Cir.1991); *supra* note 5. Therefore comments and testimony about the gun did not contradict the precedent set in *Dowling. See* 493 U.S. at 354, 110 S.Ct. 668.[6] Because Clarke's acquittal did not decide the same issues of ultimate fact as those for which he was retried, Clarke's case does not contradict, and is materially distinguishable from *Ashe. See* 397 U.S. at 443, 90 S.Ct. 1189.

Further, had Clarke, for instance, been acquitted of the battery with a dangerous weapon, collateral estoppel would bar subsequent prosecutions for penetration with the gun. *See id.* At his third trial Clarke was not charged with any offenses that required the prosecution to show beyond a reasonable doubt that Clarke touched the complainant with the gun and therefore the issue of rape or battery with the gun was never relitigated. *See Clarke III,* 2003 WL 22881000, at *2. Unlike *Ashe,* the Commonwealth was not using its vast resources to make repeated attempts to retry Clarke on the same charges after acquittal. *See* 397 U.S. at 447, 90 S.Ct. 1189; *see also Green,* 355 U.S. at 198, 78 S.Ct. 221. Therefore Clarke's subsequent conviction at the third trial did not violate protections afforded to him by the Double Jeopardy Clause. *See Dowling,* 493 U.S. at 354, 110 S.Ct. 668; *see also Schiro v. Farley,* 510 U.S. 222, 233–35, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (ruling that where jury could have grounded verdict on issue other than intent to kill, such intent could be used as aggravating factor in sentencing defendant).

**6.** As the Appeals Court never reached the merits of Clarke's double jeopardy claim due to his failure properly to raise it, that Court

could not unreasonably have applied Supreme Court precedent to the facts of this

**E. Clarke's Post–Arrest[7] Silence Was Admitted In Evidence and Therefore Was Not Used to Imply Guilt**

A defendant's choice to remain silent, after having received Miranda warnings, cannot be used against him for impeachment purposes because such silence may be nothing more than the proper exercise of his Constitutional rights. *Doyle*, 426 U.S. at 617, 619, 96 S.Ct. 2240 (1976). Because Miranda warnings implicitly assure persons that their silence will not be used against them, it would be fundamentally unfair to subsequently use that silence as an indication of guilt during trial. *See Fletcher v. Weir*, 455 U.S. 603, 606, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). Evidence of invoking the right to remain silent must not be submitted to the jury, as it would deprive defendants of due process by allowing the jury to draw an unfavorable inference. *See Greer v. Miller*, 483 U.S. 756, 764–65, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (finding no *Doyle* violation where objection to the only question touching on post-arrest silence was sustained, and curative instructions were given). Defendants who voluntarily speak after receiving Miranda warnings, however, were not induced to remain silent and may be fairly cross-examined regarding any inconsistent statements they previously made. *Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (per curiam). After being apprised of their right to remain silent, such voluntary statements made by defendants are unambiguous waivers of that right on a particular subject. *See id.*

The *Doyle* Court held that the guilt of defendants charged with selling marijuana could not be inferred from their post-Miranda silence or failure to proclaim their innocence. 426 U.S. at 617–18, 96 S.Ct. 2240. In an effort to impeach the defendants' exculpatory story at trial, the prosecution introduced evidence that the defendants remained silent instead of telling their frame-up story to police officers, and implied that if they were truly innocent, they would have so proclaimed. *Id.* at 613–14, 96 S.Ct. 2240. The Supreme Court reversed the convictions, holding that defendants' silence could not be unambiguously seen as anything more than exercise of their constitutional rights. *See id.* at 617, 96 S.Ct. 2240. The Court reasoned that, if Miranda warnings are to safeguard Fifth Amendment rights, such warnings implicitly assure defendants that exercise of their right to silence will carry no penalty. *See id.; see also Wainwright v. Greenfield*, 474 U.S. 284, 292, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (ruling that prosecution's attempt to overcome insanity plea through defendant's invocation of right to silence is fundamentally unfair); *Morgan v. Hall*, 569 F.2d 1161, 1168 (1st Cir.1978) (holding that *Doyle* prohibits use of defendant's silence and failure to offer exculpatory story to undermine his credibility).

Defendants' voluntary post-Miranda statements, however, may fairly be used at trial to impeach their inconsistent testimony. *Charles*, 447 U.S. at 408, 409, 100 S.Ct. 2180. There the defendant was found with the murder victim's stolen car and, after receiving his Miranda warning, told detectives that he stole the car from a

---

case. *See Williams*, 529 U.S. at 409–10, 120 S.Ct. 1495.

**7.** Clarke refers to his "post-conviction [sic] silence" (Petitioner's Memorandum in Sup-

port of Petition for Writ, 20, Docket No. 4). The Court assumes he means "post-arrest silence", as mentioned in *Doyle*.

particular street. *Id.* at 405, 100 S.Ct. 2180. When he claimed at trial that he stole it from a parking lot at a different location, he was questioned about this apparent inconsistency. *Id.* at 406, 100 S.Ct. 2180. The Supreme Court found no violation of Due Process and held that, because the questions did not refer to the defendant's choice to remain silent and he voluntarily chose to speak on the subject, his right to silence was not being used against him. *See id.* at 408, 100 S.Ct. 2180. *Doyle* did not prohibit using the defendant's prior inconsistent statements against him because he voluntarily waived his constitutional right not to speak on the subject. *See id.; accord Grieco v. Hall,* 641 F.2d 1029, 1034 (1st Cir.1981); *see also United States v. Donnat,* 311 F.3d 99, 105 (1st Cir.2002) (allowing questions about post-arrest inconsistent statements as they do not draw meaning from defendant's reliance on right to remain silent but instead seek to explain inconsistencies).

The Massachusetts Appeals Court set aside Clarke's second trial convictions because the prosecution ran afoul of *Doyle* when it impermissibly implied guilt from the fact that Clarke invoked his right to remain silent and ended his interview. *Clarke II,* 48 Mass.App.Ct. at 488, 722 N.E.2d 987. Accordingly, the judge presiding at the third trial did not allow testimony about who ended the interview, or the reasons for that termination (Trial Transcript vol. 1, 9, August 6, 2001) and sustained objections to all attempts by the prosecutor to ask Clarke about the inconsistent stories that caused the interview to end (Trial Tr. vol. 2, 278–280, 283, August 7, 2001). At trial, Detective Gavin testified that, after receiving Miranda warnings, Clarke voluntarily told her that he had never met the complainant before. (Trial Tr. vol. 2, 167, 170–71, 172, 173). The judge sustained objections to questions about Clarke's inconsistent stories and the

detective testified that she ended the interview "soon thereafter". (Trial Tr. vol. 2, 174). Affirming the subsequent conviction, the Appeals Court held that trial precautions prevented testimony about who ended the interview from being received in evidence and that the prosecutor's questions about inconsistencies in Clarke's testimony were appropriate. *Clarke III,* 2003 WL 22881000, at *1.

Clarke's third trial was not contrary to clearly established federal law because the trial judge properly disallowed testimony concerning Clarke's termination of his post-arrest interview and the prohibited inquiry was never submitted to the jury. *See Miller,* 483 U.S. at 764–65, 107 S.Ct. 3102. Clarke's trial judge not only granted the motion in limine to exclude testimony about the end of the interview, but also, exactly as the case before the *Miller* Court, sustained all objections to prevent any testimony about the end of the interview from being received in evidence, and instructed the jurors to disregard sustained objections and arguments by lawyers. *See id.* Because the judge's conduct in Clarke's third trial was indistinguishable from that in *Miller,* the Appeals Court decision upholding the conviction cannot be said to be "contrary to" Supreme Court precedent. *See id.* at 764–65, 767 & n. 8, 107 S.Ct. 3102.

Furthermore, the objected-to questions merely probed the inconsistency between Clarke's voluntary statements and other evidence. Therefore the Appeals Court decision was not substantially different from *Charles. See* 447 U.S. at 408–09, 100 S.Ct. 2180. Correctly identifying *Doyle* as controlling legal authority, the Appeals Court rejected Clarke's claim as not one that *Doyle* was intended to protect. *See* 426 U.S. at 619, 96 S.Ct. 2240.

The Appeals Court decision did not involve "an unreasonable application" of federal law because the jury never heard that Clarke chose to terminate the interview and it is reasonable to believe that the jury would follow instructions to disregard questions to which objections were sustained. *See Miller*, 483 U.S. at 764, 767 n. 8, 107 S.Ct. 3102. The narrow *Doyle* rule applies only to specific inquiry concerning post-Miranda silence, not to voluntary inconsistent statements, and therefore the Appeals Court's ruling fits within the matrix of prior Supreme Court decisions. *See id.* at 764–65, 107 S.Ct. 3102; *see also Charles*, 447 U.S. at 408, 100 S.Ct. 2180. Upholding Clarke's conviction was not objectively unreasonable because Supreme Court precedent allows questioning the defendant about inconsistent testimony. *See Miller*, 483 U.S. at 763–64, 107 S.Ct. 3102.

Because proper instructions and sustained objections by Clarke's third trial judge prevented the admission in evidence of any testimony that would imply guilt from Clarke's termination of his interview, the Appeals Court decision is not contrary to *Doyle*. *See* 426 U.S. at 619, 96 S.Ct. 2240. In contrast to *Doyle*, where defendants' silence and failure to proclaim their innocence were impermissibly used to imply their guilt, Clarke's trial judge correctly identified and applied *Doyle* to eliminate any such implication of guilt from Clarke's termination of his interview. *See id.* The trial judge was extremely cautious about avoiding a *Doyle* violation and even prohibited questions regarding Clarke's inconsistent statements that would be permissible under *Charles*. *See* 447 U.S. at 408, 100

S.Ct. 2180; *Doyle*, 426 U.S. at 620 n. 11, 96 S.Ct. 2240. Thus, the Appeals Court's decision affirming Clarke's third trial conviction was not an unreasonable application of federal law.[8]

### III. CONCLUSION

For the foregoing reasons and especially because Clarke's double jeopardy claim is procedurally defaulted and his post-arrest interview claim was not contrary to, or an unreasonable application of Federal law, this petition for habeas corpus is DENIED. Judgment shall enter for the respondent.

SO ORDERED.

---

8. The only case cited by Clarke in support of his *Doyle* claim concerns a defendant who was questioned on his post-Miranda failure to proclaim his innocence, not on the inconsistency of his testimony, and is thus distinguishable. *Alo v. Olim*, 477 F.Supp. 133 (D.Haw. 1979). Furthermore, *Alo* predates, and thus did not apply, the AEDPA standard of review, one which is "highly deferential" to state court decisions. 28 U.S.C. § 2254(d)(1); *see also McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir.2002) (requiring "some increment of incorrectness beyond error" to be an unreasonable application of law).